574 A.2d 641

**VALLEY FORGE TOWERS SOUTH CONDOMINIUM, Appellant,**

v.

**RON–IKE FOAM INSULATORS, INC. Mameco International, Inc., Appellee.**

Superior Court of Pennsylvania.

Argued June 22, 1989.

Filed May 1, 1990.

340

Jeffrey B. Herman, Broomall, for appellant.

Adrienne Provenzano, Philadelphia, for appellee.

Before McEWEN, KELLY and POPOVICH, JJ.

KELLY, Judge:

In this appeal we are called upon to determine whether a cause of action by a residential condominium association against roofing membrane manufacturer exists under the Pennsylvania Unfair Trade Practices and Consumer Protection Law (Pa.U.T.P.C.P.L.)[1] when the roofing membrane was sold by the manufacturer to a contractor for the reroofing of the condominium association's building, the roof warranty was issued directly to the residential condominium association by the manufacturer, and the warranty on the roofing membrane subsequently was not honored by the manufacturer. The trial court found that no cause of action existed. We reverse.

## FACTS AND PROCEDURAL HISTORY

The relevant facts and procedural history are as follows. The appellant, Valley Forge Towers South Condominium (the Condominium Association), which is an incorporated non-profit condominium association, entered into a contract with Ron–Ike Inc. (Ron–Ike) pursuant to its statutory authorization to act as representative of the individual condominium unit owners. See 68 Pa.C.S.A. § 3302(a)(5). In the contract, Ron–Ike specified that it would install a roofing membrane manufactured by the appellee, Mameco International Incorporated (Mameco), and that after the completion of the roof Mameco would send the Condominium Association a warranty guaranteeing the membrane for 10 years. Ron–Ike completed the roof in late 1984, and Mameco subsequently issued a 10–year warranty directly to the Condominium Association.

1. See 73 P.S. § 201–1 et seq.

Two years later, the roof began to leak. The Condominium Association immediately notified both Ron–Ike and Mameco of the leaky roof, and requested that both parties honor their respective warranties and repair the roof. The Condominium Association asserts that Ron–Ike made one attempt to repair the leaky roof, but was unsuccessful; and that after that unsuccessful attempt, neither Ron–Ike nor Mameco would respond to the association's further requests that they repair the roof. The Condominium Association further asserts that it then proceeded to replace the roof at a cost of $408,000.

The Condominium Association, again acting as the legally authorized representative of the unit owners (68 Pa.C.S.A. § 3302(a)(4)), then commenced the instant litigation against both Ron–Ike and Mameco setting forth the following causes of action against both corporations: breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, and a private cause of action under 73 P.S. § 201–9.2 of the Pa.U.T.P.C.P.L. (which grants trial courts discretion to award treble damages on proof of an unlawful, unfair or deceptive practice as defined by the statute, including failure to honor a written warranty, 73 P.S. § 201–2(4)(xiv)).

Mameco filed preliminary objections in the nature of a demurrer which asserted that the Condominium Association was not a "purchaser" from Mameco under the Pa.U.T.P.C.P.L.; and even if it was, the purchase of the replacement roof was not for "personal, family, or household use" within the meaning of those terms as used in the Pa.U.P.T.C.P.L. Mameco reasoned that its demurrer should be sustained on both grounds, as proof of those facts were essential in setting forth a private action for treble damages under the Pa.U.T.P.C.P.L. The Condominium Association responded that it had pled sufficient facts to present a claim that it was a "person," who "purchased" a replacement roof, "primarily for personal, family, or household use," within the meaning of those terms as used in the Pa.U.T.P.C.P.L.

The trial court sustained the demurrer. In doing so, it found that there was a lack of privity between the Condominium Association and Mameco; and therefore, the condominium association was not a "purchaser" *from Mameco* for the purposes of the Pa.U.T.P.C.P.L. The trial court found, alternatively, that the Condominium Association purchased the replacement roof in furtherance of its business purpose of managing a residential condominium complex, and that such a purchase was not "primarily for personal, family, or household purposes" as required to fall within the ambit of 73 P.S. § 201–9.2 of the Pa.U.T.P.C.P.L. This timely appeal followed.

## I. JURISDICTION

In its Pa.R.A.P. 1925(a) opinion the trial court opined that the dismissal of the Pa.U.T.P.C.P.L. count against Mameco was an unappealable interlocutory order. The trial court characterized this count as merely a different *theory* of recovery against Mameco on its breach of warranty claim against Mameco. Trial Court Opinion at 2.

The trial court cited *Cloverleaf Development Inc. v. Horizon Financial FA,* 347 Pa.Super. 75, 500 A.2d 163 (1985), in support of the general proposition that an order dismissing separate counts which merely assert alternate theories of recovery on a surviving cause of action, rather than dismissing a separate cause of action, is interlocutory and unappealable. So far, we agree. The trial court then proceeded to find that an action under 73 P.S. § 201–9.2 merely states an alternate theory in support of the breach of warranty claims which survived. No authority was cited for this proposition.

To the contrary, however, this Court applying the test set forth in *Cloverleaf Development,* has twice held that a cause of action under the Pa.U.T.P.C.P.L. is separate and distinct from breach of contract causes of action arising from the same facts. *See Gordon v. Pennsylvania Blue Shield,* 378 Pa.Super. 256, 548 A.2d 600 (1988); *Hardy v. Pennock Ins. Co.,* 365 Pa.Super. 206, 529 A.2d 471 (1987);

*cf. Neff v. Lasso,* 382 Pa.Super. 487, 492 n. 2, 555 A.2d 1304, 1306 n. 2 (1989). Likewise, we find the instant cause of action under 73 P.S. § 201–9.2 to be separate from the three breach of warranty claims which survived.[2] Hence, the appeal is properly before this Court for review.

## II. STANDARD OF REVIEW

Our standard of review of an order granting preliminary objections in the nature of a demurrer is well-settled, and has been summarized as follows:

> All material facts set forth in the pleadings as well as all inferences reasonably deducible therefrom are admitted as true for the limited purpose of this review. The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it. In reviewing the grant of a demurrer we are not bound by the inferences drawn by the trial court, nor are we bound by its conclusions of law. Furthermore, we will affirm the grant of such a motion only when the moving party's right to succeed is certain and the case is so free from doubt that further proceedings would clearly be fruitless.

*Ford Motor Credit Co. v. Caiazzo,* 387 Pa.Super. 561, 566, 564 A.2d 931, 933 (1989) (collecting cases). Finally, "the novelty of a claim or theory, alone, does not compel affirmance." *Neff v. Lasso, supra,* 555 A.2d at 1305.

**2.** In its brief to this Court, Mameco also claimed the order was interlocutory and unappealable at this juncture. Mameco, however, suggested that it was unappealable, *not* because it was duplicative of other claims *against Mameco,* but because the Pa.U.T.P.C.P.L. claim against Ron–Ike had not been dismissed. (Mameco's Brief at 20). How the pendency of an identical cause of action against Ron–Ike would affect the appealability of the order dismissing the cause of action against Mameco was neither explained, nor supported with any case law. We reject that argument as meritless. We note that *Cloverleaf Development,* the only case cited by Mameco on this subject, in no way supports the novel argument asserted.

## III. Pa.U.T.P.C.P.L. GENERALLY

The legislative intent in enacting the Pa.U.T.P.C.P.L. was to enhance the protection of the public from unfair or deceptive business practices. *Gabriel v. O'Hara,* 368 Pa. Super. 383, 388 & n. 6, 534 A.2d 488, 491 & n. 6 (1987). The principle enhancements of pre-existing common law protections included the codification of a list of practices designated as "unfair or deceptive" and therefore "unlawful" (73 P.S. §§ 201–2, 201–3), authorization of the Pennsylvania Attorney General to take several specific types of action to protect the citizenry from such practices (73 P.S. §§ 201–3.1 to 201–9.1), and authorizing a private cause of action by private parties for treble damages in certain circumstances (73 P.S. § 201–9.2). The central underlying intent was fraud prevention, and the act must be construed liberally to effectuate that remedial intent. *See Commonwealth v. Monumental Properties,* 459 Pa. 450, 329 A.2d 812, 815–17 (1974); *Gabriel v. O'Hara, supra,* 534 A.2d at 491; *Culbreth v. Lawrence Miller, Inc.,* 328 Pa.Super. 374, 477 A.2d 491 (1984).

In this case we are concerned with a private cause of action for treble damages under 73 P.S. § 201–9.2(a) which provides:

**§ 201–9.2 Private Actions**

(a) Any *person* who *purchases* or leases *goods* or services *primarily for personal, family or household purposes* and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action, to recover actual damages or one hundred dollars ($100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper.

(Emphasis added). A claimant under this section must not only have suffered an ascertainable loss as the result of an

"unfair or deceptive act," but also must be: a "person," who made a "purchase," "primarily for personal, family, or household purposes." Though the principal dispute here centers on the second and third requirements, we shall consider all three in resolving the question as to whether the trial court abused its discretion or committed an error of law in sustaining Mameco's demurrer.

## IV. "PERSON" UNDER THE Pa.U.T.P.C.P.L.

■ Neither Mameco nor the trial court questioned the Condominium Association's status as a "person," under the Pa.U.T.P.C.P.L. Nonetheless, as we find the Condominium Association's status as a "person" relevant with regard to the third requirement (relating to the primary purpose of the purchase), we discuss this requirement briefly.

Under 73 P.S. § 201–2, the term "person" (as used in 73 P.S. § 201–9.2) is defined as follows:

(2) **"Person"** means natural persons, corporations, trusts, partnerships, *incorporated* or unincorporated *associations,* and any other legal entities.

73 P.S. § 201–2(2). (Emphasis added). Incorporated associations fall squarely within the express definition of the term "person" as used in 73 P.S. § 201–9.2.

The Condominium Association involved here is an incorporated non-profit condominium association organized pursuant to 68 Pa.C.S.A. § 3301 *et seq.* As such, it was empowered to act in a *representative capacity* on behalf of its constituent unit owners to sue, enter into contracts, and to regulate the maintenance, repair, and replacement of common elements of the condominium building, including its roof. 68 Pa.C.S.A. §§ 3302(a)(4–7).

In *1000 Grandview Association v. Mt. Washington Association,* 290 Pa.Super. 365, 434 A.2d 796 (1981), this Court held that even in absence of express legislative authorization for an incorporated association of condominium unit owners to sue in a representative capacity on behalf of unit members, representative standing would nonetheless be recognized generally. 434 A.2d at 797–98. In that case, we

noted the repeal of the Unit Property Act and the adoption of the Uniform Condominium Act which removed any lingering doubt on the issue of representative standing in future cases (such as the instant case) by expressly authorizing condominium associations sue on behalf of the unit owners.

The Condominium Association was a "person" under the Pa.U.T.P.C.P.L.

## V. "PURCHASE" UNDER THE Pa.U.T.P.C.P.L.

■ The most vexing problem presented by this appeal is whether the absence of technical privity between the Condominium Association and Mameco precludes liability under 73 P.S. § 201–9.2. We find that the Condominium Association was a "purchaser" under the act, and that the absence of privity did not preclude liability on Mameco's part for injuries to the Condominium Association under the Act.

Careful review of the statute reveals that it is silent on the significance of privity. While a claimant under 73 P.S. § 201–9.2 must be a person who makes a purchase for personal, family or household purposes, who suffers an ascertainable loss as the result of an unlawful, unfair or deceptive practice, there is no express requirement that there be strict technical privity between the party suing and the party sued. Whether or not strict technical privity should be deemed to be an *implied* requirement for a cause of action under the act is therefore a matter of statutory construction. 1 Pa.C.S.A. § 1921(c).

In resolving this question of legislative intent, it is necessary first to consider the occasion and necessity for the statute, the circumstances under which it was enacted, the mischief to be remedied, the object to be attained, and the former law. Essentially, we must consider the historical context of the enactment. Succinctly, the law was passed to substantially enhance the remedies available to consumers as the result of unfair or deceptive business practices, specifically including the failure to comply with any written guarantee or warranty. *Gabriel v. O'Hara, supra,* 534

A.2d at 491 & n. 6; *see also* 73 P.S. § 201–2(4)(xiv). This underlying legislative intent weighs heavily against implying a restrictive requirement which would hinder the act's remedical effects, or provide a simple expedient for evasion of its force.

Next, we consider the law which applies in analogous cases. In *Woodward v. Dietrich*, 378 Pa.Super. 111, 548 A.2d 301 (1988), this Court traced the erosion of the privity defense in actions for fraud and deceit with particular emphasis on cases involving construction contracts. 548 A.2d at 308–16. We concluded that a contractor may be sued for fraud in absence of strict privity when the third party was "specifically intended" to rely upon the fraudulent conduct or when the reasonable reliance of a third party on the fraudulent conduct was "specially foreseeable." 548 A.2d at 312–16. The latter situation involved an extension of the common law liability for fraud, and an erosion of common law privity concepts.

Under the facts pled here, Mameco's liability for the Condominium Association's reasonable reliance upon Mameco's warranty would require no such erosion of common law privity concepts. Even under the *early* common law, a contractor was liable in tort for injuries to third parties who were specifically intended to rely upon the fraudulent assurances, notwithstanding an absence of privity. *See Woodward v. Dietrich, supra,* 548 A.2d at 311–12 (collecting cases).

In the instant case, it is alleged that Ron–Ike, the roof repair contractor, purchased the roofing material from Mameco in accordance with specifications in its contract with the Condominium Association that Mameco's materials be used, and that Mameco issued its 10–year warranty directly to the Condominium Association. Accepting the facts pled as true, Mameco had unequivocal notice that the Condominium Association was the actual *intended* beneficiary of its warranty. Indeed, Mameco had issued its warranty directly to the Condominium Association. Hence, even under the early common law, privity would not have been necessary to

sustain an action by the Condominium Association against Mameco for damages in tort asserting fraud. *See Woodward v. Dietrich, supra,* 548 A.2d at 312.

Moreover, as the materials were intended to become part of a fixture to realty, Mameco knew or should have known that its warranty would be relied upon by any subsequent purchasers or lessees of the condominium units covered by the roof it warranted. *Cf. Woodward v. Dietrich, supra.* Otherwise stated, the Condominium Association's reasonable reliance was "specially foreseeable" even if it had not been "specifically intended." *Id.,* 548 A.2d at 315–16.

Pennsylvania courts have repeatedly stated that the Pa. U.T.P.C.P.L. is focused upon eradicating *fraudulent* business practices. *Commonwealth v. Monumental Properties, supra; Gabriel v. O'Hara, supra; Culbreth v. Lawrence Miller, Inc., supra.* Consequently, we find the case law regarding *privity* and *fraud* highly relevant in ascertaining the legislature's probable intent with regard to *privity* and the cause of action authorized by our legislature *via* 73 P.S. § 201–9.2. This case law also weighs heavily against implying a strict technical privity requirement in the cause of action authorized by 73 P.S. § 201–9.2.

Finally, we consider the consequences of the alternate constructions suggested. If we imply a strict technical privity requirement, Mameco and others would be able to successfully evade liability for alleged failures to honor their long-term warranties based upon the simple expedient of supplying their product and their warranties to intended ultimate purchasers, through a general contractor. Disreputable businesses might set-up judgment proof, under-capitalized contractors for just that purpose; or they might deceive reputable contractors, leaving them to pay the judgment when the deception is discovered later. Such an exception could eviscerate the rule.

If, on the other hand, we instead follow the common law of fraud as it has developed in this Commonwealth, liability under 73 P.S. § 201–9.2 would extend to those in privity, those specifically intended to rely upon the fraudulent con-

duct, and those whose reasonable reliance was specially foreseeable. *See Woodward v. Dietrich, supra.* No injustice is apparent in such a construction. Consequently, we find the latter construction more consonant with the remedial focus of the Pa.U.T.P.C.P.L. on eradicating fraudulent business practices.

Based upon the foregoing, we conclude that strict technical privity *was* not intended by our legislature to be required to sustain a cause of action under 73 P.S. § 201–9.2. The statute is to be construed broadly to effectuate its generally intent to eradicate fraudulent business practices. Consequently, we decline to engraft a requirement of strict technical privity onto a silent statute, especially since no such restriction applies in fraud cases generally. *Cf. Woodward v. Dietrich, supra.*

Hence, we find that the Condominium Association's purchase of the roof from Ron–Ike, which was warranted directly by Mameco, was a "purchase" giving rise to liability on the part of Mameco under the Pa.U.T.P.C.P.L. for failure of Mameco to honor its warranty, notwithstanding the absence of direct privity between Mameco and the Condominium Association.

## VI. PRIMARILY FOR PERSONAL, FAMILY, OR HOUSEHOLD PURPOSES UNDER THE Pa.U.T.P.C.P.L.

■ The principal restriction placed upon the private cause of action for treble damages under the Pa.U.T.P.C.P.L. is that the purchase must be "primarily for personal, family or household purposes...." 73 P.S. § 201–9.2. Mameco argued, and the trial court agreed, that the Condominium Association was a business consumer, rather than a consumer for personal, family or household purposes. We cannot agree.

The primary purpose restriction of 73 P.S. § 201–9.2 has not been construed previously by the appellate courts of this Commonwealth. Consequently, on this issue of first

impression, we turn initially to the federal district court decisions construing this portion of the act.

In a series of cases, federal district courts have construed the primary purpose restriction of 73 P.S. § 201–9.2 to preclude a cause of action by one business against another business for various types of unfair competition. *See e.g. Merv Swing Agency, Inc. v. Graham Co.,* 579 F.Supp. 429 (E.D.Pa.1983) (disparagement of business); *Zerpol Corp. v. DMP Corp.,* 561 F.Supp. 404 (E.D.Pa.1983) (commercial disparagement); *Klitzner Industries v. HK James, Co.,* 535 F.Supp. 1249 (E.D.Pa.1982) (passing one's goods off as another's); *Permagrain Products v. U.S. Mat & Rubber, Co.,* 489 F.Supp. 108 (E.D.Pa.1980) (same). In another case, a district court held that no cause of action could be presented under 73 P.S. § 201–9.2, by the purchaser of a truck, when the lease and insurance papers conclusively established that the purchase was primarily for commercial purposes. *Waldo v. North American Van Lines,* 669 F.Supp. 722 (W.D.Pa.1987).

Those cases appear to correctly apply the primary purpose limitation to the facts presented. Unfortunately, those cases provide little, if any, guidance as to the proper application of the primary purpose limitation to the facts presented here.

Mameco argues that liability is precluded for two reasons: its roofing materials were not typical "consumer products," and the Condominium Association was in the business of managing the condominium, and so was not a purchaser for personal, family, or household use. The trial court agreed with the latter argument. We agree with neither.

■ Mameco's focus upon the *type of product* involved is misplaced. The restriction included in the act addresses itself solely to the *purpose* of the purchase, not the *type of product* purchased.

The following example illustrates this distinction. If a laundry business were to purchase a home-use model, department store dryer for the primary purpose of drying

clothes for the laundry business, such a purchase would be primarily for a *business* purpose, despite the fact that the dryer may have been a typical "consumer product." On the other hand, if the parents of twelve growing children purchased an industrial washer and dryer from a business supplier to be used primarily to do the family's laundry, the purchase would be primarily for a family purpose and come within the ambit of 73 P.S. § 201–9.2, notwithstanding the fact that industrial washers and dryers generally might not be considered typical "consumer products."

In previous cases, the purchase or lease of a home, condominium, or apartment for *residential* purposes has been implicitly treated as being "primarily for personal, family, or household purposes" under the Pa.U.T.P.C.P.L.. *See Commonwealth v. Monumental Properties, supra; Gabriel v. O'Hara, supra; 1000 Grandview Association v. Mt. Washington Association, supra.* We can see no reason why, if a purchase or lease of the *whole* residential unit comes within the act, a contract regarding *part* of the unit (*i.e.* its roof) would not also be covered by the act.

That bricks, mortar, and roofing materials are not commonly characterized as "consumer products" is irrelevant. The *purpose* of the purchase, and not the *type of product* purchased, controls. When a roof is purchased to cover a *residential* unit, whether it is the first roof or a replacement roof, the roof purchased is being purchased "primarily for a personal, family, or household use," *i.e.* as a necessary part of a personal, family, or household residence. Hence, we reject the "type of product" rationale asserted by Mameco for sustaining the demurrer.

Mameco argues further that the Condominium Association is in the business of managing the condominium building, and is therefore a business purchaser. The trial court agreed. We cannot.

The fundamental error in this reasoning is the characterization of the Condominium Association as being in the business of managing the condominium building. It is true that Pennsylvania law permits condominium associations to

incorporate as a for-profit or as a non-profit corporation. *See* 68 Pa.C.S.A. § 3301. Regardless, such condominium associations act in a *representative* capacity on behalf of the unit owners when contracting, and when bringing suit. 68 Pa.C.S.A. § 3302; *see also 1000 Grandview Association v. Mt. Washington, supra.*[3]

In *1000 Grandview Association v. Mt. Washington Association, supra,* this Court held that a condominium association could represent individual unit owners who had purchased units for residential purposes by pursuing legal redress acting in a *representative* capacity on behalf of the individual unit owners. Implicit in our recognition of the condominium association's standing in that case was a conclusion that the *representee's residential use,* rather than the condominium association's putative business purpose of managing the condominium building, was the relevant purpose in applying the primary purpose restriction of 73 P.S. § 201–9.2. What was implicit there, we make explicit here. When a condominium association acts in its representative capacity on behalf of unit owners, it is the purpose of the unit owners' purchases which controls for the purposes of the primary purpose restriction of 73 P.S. § 201–9.2.

According to the pleadings, the condominium building upon which the roof was placed here, was *primarily* used for personal, family, or household *residential* use by the unit owners and/or their lessees. While the record reveals that some of the units in the building were used for *business* purposes, neither the number of such units, nor the square footage involved, would provide a basis to conclude at this nascent stage in the proceedings that *business* rather than *residential* use predominated. We note in this regard, that because a leak-proof roof is ultimately essential to the structural integrity of the whole condominium building, it is the primary (preponderate) purpose (use) of

**3.** While we do not consider the distinction decisive, we note that here the Condominium Association was incorporated as a *non* -profit corporation. Thus, the "business" characterization of the Condominium Association is undermined even further.

the whole building, and not the most directly affected units which would control.

Hence, we conclude that, giving the Condominium Association the benefit of all facts pled and all favorable inferences reasonably derivable therefrom, the roof was purchased "primarily for personal, family, or household purposes" within the meaning of those words in the Pa.U.T.P.C.P.L.

## CONCLUSION

Based upon the foregoing, we conclude that the order sustaining Mameco's demurrer must be vacated, and that the Condominium Association's cause of action against Mameco under 73 P.S. § 201–9.2 must be reinstated.

Order vacated. Case Remanded. Jurisdiction relinquished.