J-A11029-16

| | |
|---|---|
| GLENN AND WENDY DIEHL, H/W AND DANIEL AND SUSAN SCOTT, H/W AND GAYATHRI AND SRIRAM KRISHNAN, H/W AND RASHMI RADHAKRISHNAN AND LISA PARVISKHAN AND JOSEPH AND ANN WORRELL, H/W | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| THE CUTLER GROUP, INC. | |
| APPEAL OF: JOSEPH AND ANN WORRELL, H/W | No. 2302 EDA 2015 |

Appeal from the Order Entered December 22, 2014
In the Court of Common Pleas of Chester County
Civil Division at No(s): 2010-08568

BEFORE: SHOGAN, J., MUNDY, J., and FITZGERALD, J.[*]

DISSENTING MEMORANDUM BY MUNDY, J.:          **FILED JULY 18, 2016**

I respectfully dissent from the learned Majority's decision to affirm the grant of summary judgment in favor of Cutler. In my view, the Worrells' claim under the UTPCPL may proceed to trial.

As the Majority notes, a private cause of action is explicitly authorized by the UTPCPL and our Supreme Court has instructed that we construe the UTPCPL liberally. **See generally** Majority Memorandum at 6-7; 73 P.S. § 201-9.2(a); **Fazio v. Guardian Life Ins. Co. of Am.**, 62 A.3d 396, 405

_____

[*] Former Justice specially assigned to the Superior Court.

(Pa. Super. 2012) (citation omitted; emphasis added), *appeal denied*, 72 A.3d 604 (Pa. 2013).

The Majority further cites the following portion of the Worrells' complaint, alleging Cutler engaged in the following unfair or deceptive trade practices.

> 134.  Due to the defective conditions set forth [in the complaint, Cutler] has violated the [UTPCPL], in that [Cutler]:
>
> > a.    represented that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have;
> >
> > b.    represented that goods or services are of a particular standard, quality or grade when they were another;
> >
> > c.    failed to comply with the terms of a written guarantee or warranty given to the buyer at, prior to, or after a contract for the purchases of goods or services; and
> >
> > d.    made improvements on tangible, real or personal property, of a nature or quality inferior to or below the standard of that agreed to in writing.

The Worrells' Amended Complaint, 2/25/11, at ¶ 134; **see also generally** 73 P.S. § 201-2(4)(v), (vii), (xiv), (xvi).  Cutler's motion for summary judgment solely argued that the Worrells' claim under the UTPCPL was precluded as a matter of law, because there was an admitted lack of privity between Cutler and the Worrells.  Cutler's Second Motion for Summary

Judgment, 9/9/14, at ¶¶ 2-3. Cutler's summary judgment motion relied exclusively on our Supreme Court's opinion in *Conway v. Cutler Group*, 99 A.3d 67 (Pa. 2014), which I discuss *infra*. Although the Majority agrees that privity is not required under the UTPCPL, the Court nevertheless affirms the trial court's order. I cannot agree for the following reasons.

In *Valley Forge Towers S. Condo. v. Ron-Ike Roof Insulators, Inc.*, 574 A.2d 641 (Pa. Super. 1990), *affirmed*, 605 A.2d 798 (Pa. 1992) (*per curiam*), this Court confronted the question of whether the UTPCPL private cause of action requires privity. The Court recognized, as do the parties here, that in the UTPCPL "there is no express requirement that there be strict technical privity between the party suing and the party sued." *Id.* at 645. Therefore, this Court proceeded to examine whether, as a matter of Pennsylvania law, "privity should be deemed to be an *implied* requirement for a cause of action under the [UTPCPL.]" *Id.* (emphasis in original).

To make that determination, the *Valley Forge* Court extensively examined three fundamental considerations. First, the *Valley Forge* Court noted that the General Assembly enacted the UTPCPL "to substantially enhance the remedies available to consumers as the result of unfair or deceptive business practices," and this intent "weighs heavily against implying a restrictive requirement which would hinder the act's remedial effects, or provide a simple expedient for evasion of its force." *Id.* at 646. Second, the *Valley Forge* Court looked at how the law of privity had been

- 3 -

"eroded" when applied to claims of fraud. *Id.* Third, the *Valley Forge* Court rejected alternative constructions of the UTPCPL, that in its view would lead to evasions of liability. *Id.* at 646-647. Based on these considerations, this Court rejected the argument that the UTPCPL contains an implied privity requirement as a matter of law. *Id.* at 647.

Further, our decision in *Woodward v. Dietrich*, 548 A.2d 301 (Pa. Super. 1988), upon which the *Valley Forge* Court heavily relied, should also guide the resolution of the instant case. In *Woodward*, the plaintiffs, subsequent purchasers of a home, sued the Dietrichs, the sellers of the home, and Smith, who was an excavator. *Id.* at 303. The complaint alleged the "basement had been flooded and damaged two years after they purchased their home from the Dietrichs[.]" *Id.* The complaint further alleged "the defendants … fraudulently misrepresented and concealed the fact that the [gray] water sewage sewer connection had not been completed by Smith in the manner indicated in the township records and communicated to the Woodwards by the Dietrichs during their negotiations relating to their purchase of the Dietrichs' residence." *Id.*

Smith filed preliminary objections in the nature of a demurrer, averring that "[t]he plaintiffs are not in privity with defendant Smith." *Id.* at 304. The trial court sustained the preliminary objections and dismissed the complaint against Smith, but this Court reversed. The Woodwards argued "that the non-installation of the gray water sewer connection was

fraudulently concealed by Smith, and … they reasonably relied on the misrepresentations made relating to the sewers in purchasing the Dietrichs' house and that they incurred substantial damages proximately caused by the concealed non-installation of the gray water sewage sewer connection." *Id.* at 307. This Court concluded that the Woodwards' reliance "on misrepresentations relating to the concealed [gray] water sewage sewer connections," as alleged, was reasonable. *Id.* We further held that the Woodwards' reliance was foreseeable by Smith.

> The Woodwards alleged that as potential subsequent purchasers their reliance was specially foreseeable. In our present mobile society, estates in land are transferred freely and regularly. Thus, while Smith may not have known that the Dietrichs would sell their home, the possibility of such a sale during the useful lifetime of a sewer connection was certainly quite foreseeable. *Cf. Barnhouse v. City of Pinole*, 183 Cal.Rptr. 881, 894 (Cal. Ct. App. 1982) (the sale of a home to a subsequent purchaser was certainly foreseeable); *Terlinde v. Neely*, 271 S.E.2d 768, 770 (S.C. 1980) (the sale of a home to a subsequent purchaser was clearly foreseeable). If, as alleged, Smith had concealed the non-installation of the [gray] water sewage connection from the Dietrichs, Smith would have had special reason to foresee that any subsequent purchaser would be unaware of the material latent defect Smith allegedly concealed.

*Id.* at 311 (parallel citations omitted).

The **Woodward** Court next considered whether the Woodwards' claim was precluded because of the conceded lack of privity between Smith and the Woodwards, who were subsequent, remote purchasers of the home. We

noted that our Supreme Court, as far back as 1931, had "eroded and then fully abandoned" the defense of privity when it "recognized a general exception to the strict privity rule for those whom the contractor should expect, that in the natural course of things, would also be brought into contact with or use the defective article or structure." *Id.* at 314. This Court ultimately concluded that the admitted lack of privity between Smith and the Woodwards was not a bar to the Woodwards' claims, and that those claims could proceed. *Id.* at 316.

Instantly, the trial court concluded that the Worrells' UTPCPL claim failed based upon the following rationale.

> Unlike *Valley Forge Towers*, there is no evidence of record at bar to suggest that [Cutler] had unequivocal notice that the Worrells were the intended beneficiaries of the warranty. There is no evidence of record that the Worrells were specifically intended to rely upon the alleged fraudulent conduct of [Cutler]. The allegations contained in paragraph 134 of the [a]mended [c]omplaint focus on representations and warranties given to the Kings, the original purchasers of the home. Absent any allegations of fraudulent conduct on the part of [Cutler] directly involving the Worrells, this claim cannot go forward.

Trial Court Order, 12/22/14, at 4 n.1. The Majority adopts this rationale, concluding that a "special relationship" is required under the UTPCPL. Majority Memorandum at 11-12. I note that privity is defined as "[t]he connection or relationship between two parties, each having a legally recognized interest in the same subject matter (such as a transaction,

proceeding, or piece of property)." BLACK'S LAW DICTIONARY 1217 (7th ed. 1999). Furthermore, vertical privity is defined as "[t]he legal relationship between parties in a product's chain of distribution (such as a manufacturer and a seller)." *Id.* at 1218.

With due respect to the trial court and the Majority, this conclusion is simply a privity defense cloaked in different language. As discussed above, this Court held, as a matter of law, that privity is neither an explicit **nor implicit** requirement of the UTPCPL. *Valley Forge*, *supra*. The Majority acknowledges this legal tenet, which concedes that the Worrells' argument is correct. Majority Memorandum at 11. In my view, given that this Court agrees with the Worrells as to Cutler's only argument that it raised to the trial court, no further inquiry is required. Whether one subscribes to the trial court's requirement "of fraudulent conduct on the part of [Cutler] **directly** involving the Worrells," or the Majority's "special relationship" requirement, they both have the inescapable effect of requiring the Worrells to show a "connection or relationship between [Cutler and the Worrells], each having a legally recognized interest in the same subject matter (such as a transaction, proceeding, or **piece of property**)." BLACK'S LAW DICTIONARY 1217 (7th ed. 1999) (emphasis added); Trial Court Order, 12/22/14, at 4 n.1 (emphasis added); *see also generally* Majority Memorandum at 11-12.

This is tantamount to an implicit privity element, which the Majority concedes is foreclosed by **Valley Forge**.[1]

In addition, I view the trial court's requirement that the Worrells show they "were specifically intended to rely upon the alleged fraudulent conduct of [Cutler]" as too rigid. Trial Court Order, 12/22/14, at 4 n.1. As we noted in **Woodward**, with regard to claims of fraudulent misrepresentation, reliance by a subsequent homeowner need only be "foreseeable." **Woodward**, **supra** at 311. We observed in 1988 that in "our present mobile society, estates in land are transferred freely and regularly." **Id.** Certainly, this is also true in 2016. In **Woodward**, we observed that while "Smith may not have known that the Dietrichs would sell their home, the possibility of such a sale during the useful lifetime of a sewer connection was quite foreseeable." **Id.** Instantly, while Cutler may not have known that the Kings would sell their home, the possibility of such a sale during the useful

_____

[1] Even assuming the Majority's "special relationship" requirement to be correct, it is unclear why the Worrells do not meet that requirement. It appears the Majority arrives at this requirement through language in **Valley Forge Towers**, discussing "special" foreseeability, which itself came from **Woodward**. **Valley Forge Towers**, **supra** at 349, *quoting* **Woodward**, **supra** at 312-316. As I explained, **Woodward** concluded that a subsequent purchaser's reliance on misrepresentations **made by a contractor** to the first purchaser is "specially foreseeable." **Woodward**, **supra** at 310-312. Respectfully, I believe the Majority is incorrect when it frames the Woodwards' argument as pertaining to "misrepresentations made by the seller[,]" who were the Dietrichs. Majority Memorandum at 11 n.3. The relevant portion of **Woodward**'s analysis was "whether the Woodwards have stated a valid cause of action for fraudulent misrepresentation against Smith[,]" who was the contractor. **Id.** at 310.

lifetime of the original stucco cladding system was also foreseeable. Significantly in **Woodward**, we held the representations alleged to be made by Smith to the Dietrichs were reasonably relied upon by the Woodwards.[2] **See generally Woodward**, **supra** at 310-311.

I recognize that **Woodward** dealt with claims of fraudulent misrepresentation and concealment, and not the UTPCPL directly. Nevertheless, it is axiomatic that the UTPCPL is a consumer protection statute, in which the General Assembly has employed broad phrasing that our Supreme Court has instructed us to construe liberally. **See generally Schwartz v. Rockey**, 932 A.2d 885, 897 (Pa. 2007). If a subsequent purchaser of a home need not be in privity, and need only "reasonably rely" on representations made to the first owner in fraudulent misrepresentation claims, then *a fortiori*, the same is true of the UTPCPL, which as noted above, provides a broader, more liberally construed remedy.

Also in support of its conclusion, the Majority posits that "to conclude that Cutler is liable to the Worrells, subsequent purchasers who were strangers to the contract between Cutler and the original purchaser, could place Cutler in a position of warrantor to all subsequent purchasers." Majority Memorandum at 10. This conclusion is erroneous for several

---

[2] My disagreement in this case is limited to Paragraphs 134(a) and (b) of the Worrells' complaint pertaining to representations made by Cutler. I express no opinion on Paragraphs 134(c) and (d) pertaining to agreements, warranties, and writings.

reasons. As noted above, my disagreement is not contingent on Paragraphs 134(c) and (d) pertaining to warranties.

Second, even if this argument applies to Paragraphs 134(a) and (b), there can never be any "unlimited" liability as the Majority suggests. *Woodward* emphasizes "the liability … recognized [must] not [be] indefinite as to amount, duration or class of prospective plaintiffs." *Woodward*, *supra* at 303. Certainly the UTPCPL does not provide for "indefinite" damages, and the Worrells would have the burden to prove their damages at trial like every other plaintiff. Liability would not be temporally indefinite because, as this Court pointed out in *Conway*, "all homeowners must still bring their claims within the 12-year period set out by the statute of repose." *Conway v. Cutler Group*, 57 A.3d 155, 162-163 (Pa. Super. 2012) (footnote omitted), *reversed*, 99 A.3d 67 (Pa. 2014), *citing* 42 Pa.C.S.A. § 5536(a) (stating, "a civil action or proceeding brought against any person lawfully performing or furnishing the design, planning, supervision or observation of construction, or construction of any improvement to real property must be commenced within 12 years after completion of construction of such improvement[]"). Finally, permitting the Worrells' case to go to trial would not permit an indefinite "class of perspective plaintiffs" to sue Cutler. Any such class can only be owners of the home within the General Assembly's 12-year statute of repose.

Therefore, the endless liability that the Majority forecasts simply does not exist.

Finally, I address Cutler's reliance on our Supreme Court's decision in **Conway**. In **Conway**, our Supreme Court concluded "where the builder-vendor sold a new home to a purchaser-user, we hold that an action for breach of the implied warranty requires contractual privity between the parties." **Id.** at 73. Our Supreme Court also stated, "the question of whether and/or under what circumstances to extend an implied warranty of habitability to subsequent purchasers of a newly constructed residence is a matter of public policy properly left to the General Assembly." **Id.** at 72. We note that the UTPCPL provides a remedy and cause of action of the General Assembly's creation, for which we have held no privity is required. Therefore, **Conway** does not preclude the Worrells' case from proceeding.

Based on the foregoing, I conclude the trial court erred when it granted Cutler's motion for summary judgment as to the Worrells' claim under the UTPCPL. **See Cadena**, **supra**. Accordingly, I would reverse the trial court's December 22, 2014 order. I respectfully dissent.