J-A08022-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| CHRISTOPHER ADAMS AND MARGARET A. ADAMS, H/W, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellants | |
| v. | |
| HELLINGS BUILDERS, INC., | |
| Appellee | No. 1407 EDA 2015 |

Appeal from the Order Entered April 17, 2015
In the Court of Common Pleas of Chester County
Civil Division at No(s): 2014-11344-TT

BEFORE:  BOWES, OLSON AND STRASSBURGER,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED JULY 26, 2016**

Appellants, Christopher Adams and, his wife, Margaret A. Adams appeal from the order entered on April 17, 2015, sustaining preliminary objections filed by Hellings Builders, Inc. (Hellings) and dismissing Appellants' complaint.   Upon careful review, we vacate the order and reinstate the complaint against Hellings.

The trial court summarized the facts of this case as follows:

> In 2011, Appellants purchased a home from the Witsky [f]amily, [none of whom] [is] a party to this action.  The Witsky[s] bought the home as a newly constructed dwelling from Hellings [] in 2008.

> In 2014, [Appellants] noticed that other homes in the neighborhood were being tested for moisture.  Armed only with this observation, [] Appellants decided to hire a company to conduct infrared testing on their home to test for moisture infiltration.

*Retired Senior Judge assigned to the Superior Court.

According to [Appellants], the testing results indicated possible moisture infiltration and the possible presence of mold due to the improper application of stucco.

\* \* \*

Appellants filed suit against [Hellings] alleging, *inter alia*, violation of the Unfair Trade Practices and Consumer Protection Law, 73 P.S. 201-1 *et seq*. (hereinafter UTPCPL). [Hellings] filed [p]reliminary [o]bjections asserting that [] Appellants were not the direct purchasers of the property, had no direct business dealings with [Hellings], [Hellings] was never employed by Appellants and therefore could not raise [a claim under] the UTPCPL. In addition, [Hellings] argued that Appellants failed to establish that they relied on direct conversations with [Hellings]. Appellants argue that there are promotional materials which assert [Hellings] build[s] nice homes that they relied upon in making their purchase.

Trial Court Opinion, 7/21/2015, at 2 (emphasis and quotations omitted).

The trial court sustained Hellings' preliminary objections by order dated April 17, 2015. This timely appeal resulted.[1]

Appellants present the following issues for our review:

a. Whether the [t]rial [c]ourt erred in sustaining Hellings Builders Inc.'s demurrer to Count I and Count II of [Appellants'] [c]omplaint for [v]iolation of the [UTPCPL] and [f]raud on the basis that "Hellings made no representation to [Appellants]" where [Appellants] have specifically pled that Hellings Builders Inc. made specific representations that [Appellants] relied upon in purchasing the [h]ome, and where the standard for

---

[1] Appellants filed a notice of appeal on May 12, 2015. On May 13, 2015, the trial court ordered Appellants to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellants complied timely on May 29, 2015. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on July 21, 2015.

resolving preliminary objections requires that such specific averments be taken as true.

b. Whether the [t]rial [c]ourt erred in sustaining Hellings Builders Inc.'s demurrer to Count I of [Appellants'] [c]omplaint for [v]iolation of the UTPCPL and Count II for [f]raud where [Appellants'] reliance on representations to the original purchasers was specially foreseeable by Hellings Builders Inc., and where the Pennsylvania Superior Court has specifically ruled that a contractor is liable to subsequent purchasers of a home for fraud for representations made to the original owners on the basis that such reliance is specially foreseeable, and where such specially foreseeable reliance may be the basis for a claim for violation of the UTPCPL, even if such reliance had not been specifically intended.

c. Whether the [t]rial [c]ourt erred in sustaining Hellings Builders Inc.'s demurrer to Counts I and II of [Appellants'] [c]omplaint in finding that, as a matter of law, [Appellants] were required to plead that representations by Hellings Builders Inc. were made directly to [Appellants], despite the fact that the UTPCPL is a remedial statute specifically directed at eradicating fraudulent practices towards consumers, and despite the fact that such a requirement constitutes a *de facto* privity requirement and such a privity requirement has been rejected by the Superior Court of Pennsylvania for claims for fraud and claims brought under the UTPCPL.

Appellants' Brief at 4-5 (citations and suggested answers omitted).

All of Appellants' issues are interrelated, so we will examine them together. Generally, Appellants argue the trial court erred in sustaining Hellings' preliminary objections and dismissing Appellants' complaint. First, Appellants assert they "specifically pled that they relied on the representations made by Hellings regarding the quality of the [h]ome [they purchased], which the [t]rial [c]ourt was bound to consider as true under the well-settled standard of review for preliminary objections." *Id.* at 13

(emphasis omitted). Appellants claim they relied "on promotional materials and statements [Hellings] made directly to the public" when purchasing the home. *Id.* at 15. More specifically, Appellants contend that Hellings represents itself as "one of the area[']s most reputable builders" and its corporate slogan is "Building A Higher Standard." *Id.* at 16. Appellants assert that Hellings is liable for water damage to their home because they relied upon Hellings' misrepresentations. *Id.* at 16-17. Next, Appellants argue the trial court erred by sustaining Hellings' preliminary objections on their UTPCPL claim because:

> Pennsylvania law recognizes that claims for fraud and for violation of the UTPCPL do not require privity [and] subsequent purchasers of residential real estate are specially foreseeable plaintiffs *vis-à-vis* the home builder, are entitled to rely on statements made by the home-builder to the original purchasers and have standing to bring a claim for fraud based on misrepresentations made by the home-builder to the original purchasers.

*Id.* at 17. Similarly, Appellants maintain the trial court erred by dismissing their fraud claim because they alleged, as subsequent purchasers of the home at issue, that they were specially foreseeable plaintiffs who relied upon Hellings' knowingly false misrepresentations to the original homeowners and, as a proximate result, Appellants suffered moisture infiltration damage to their home from defective stucco installation. *Id.* at 25-32.

We review a challenge to a trial court's decision to sustain preliminary objections under the following standard:

> Our standard of review of an order of the trial court overruling or [sustaining] preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.
>
> Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*Feingold v. Hendrzak*, 15 A.3d 937, 941 (Pa. Super. 2011) (internal citation omitted).

Our decisions in *Woodward v. Dietrich*, 548 A.2d 301 (Pa. Super. 1988) and *Valley Forge Towers South Condominium v. Ron-Ike Foam Insulators, Inc.*, 574 A.2d 641 (Pa. Super. 1990) are dispositive of the issues presented herein. Those cases provide that fraud and UTPCPL claims may be asserted by third parties against contractors who make misrepresentations, despite the absence of privity, when reliance is specially foreseeable and damage proximately results.

In *Woodward*, "we [we]re called upon to determine whether a party may be held liable for damages proximately resulting from a person's reasonable reliance on fraudulent misrepresentations, despite the fact that such a person had no privity with the party making the misrepresentations

- 5 -

and was not specifically intended to rely on the misrepresentations, when the reliance was nonetheless specially foreseeable." ***Woodward***, 548 A.2d at 303. The Woodwards filed a complaint alleging "their basement had been flooded and damaged two years after they purchased their home from the Dietrichs" because either the Dietrichs and/or Harry Smith, a sewer contractor, "had fraudulently misrepresented and concealed the fact that the grey water sewage sewer connection had not been completed by Smith in the manner indicated in the township records and communicated to the Woodwards by the Dietrichs during their negotiations relating to their purchase of the Dietrichs' residence." ***Id.***

Initially, the ***Woodward*** Court noted that "[u]nder our early case law, a contractor's liability for defects in the construction was limited to the persons in direct privity with the contractor; the contractor was fully absolved from liability to third persons for injuries caused by even latent defects upon delivery and acceptance of possession of the realty." ***Id.*** at 314. However, as the ***Woodward*** Court recognized, "[t]he privity requirement of earlier caselaw was first eroded and then fully abandoned by our Supreme Court." ***Id.*** Thus, in examining "whether the Woodwards [] stated a valid cause of action for fraudulent misrepresentation against Smith[,]" this Court conducted a "two part analysis: first, [] determin[ing] the degree of foreseeable and reasonable reliance alleged, and then [] decid[ing] whether liability for fraudulent misrepresentation may be predicated upon such foreseeable reasonable reliance." ***Id.*** at 310.

"[W]e concluded that the Woodwards[] alleged specially foreseeable reasonable reliance upon Smith's misrepresentations" because: (1) "sewer connections are not by their nature open to inspection [and] prospective buyers must ordinarily rely upon representations made by the sellers and any confirmatory documentation available[;]" (2) "while Smith may not have known that the Dietrichs would sell their home, the possibility of such a sale during the useful life of the a sewer connection was certainly quite foreseeable[;]" and, (3) "Smith's alleged fraudulent procurement of governmental approval of the concealed non-installation of the gray water sewage sewer connection would also increase the foreseeability of a subsequent purchaser's reliance on misrepresentations[.]" *Id.* at 311-312.

The *Woodward* Court ultimately found:

> Assuming that the Dietrichs were not parties to the alleged fraudulent conduct by Smith, recognition of the Woodwards' cause of action against Smith would merely allow the right to recover for damages proximately caused by the fraudulent misrepresentations and concealed non-installation to pass from the seller to the buyer when subsequent transfer of the property substituted a new victim for the original victim of the undiscovered fraud. Under the facts alleged, only the identity of the victim was affected by the sale of the property by the Detrichs; the amount, duration, and class of persons to whom Smith was alleged to be liable for damages remained the same.
>
> *          *          *
>
> If, as alleged, the Dietrichs were not aware of Smith's alleged fraudulent camouflaged non-installation of grey water sewage sewer connection, we can see no reason why the Dietrichs' sale of the home to the Woodwards should absolve Smith from liability for damages proximately caused

by such fraud. When fraud creates or conceals a latent defect, transfer of the defective chattel or realty to an innocent third party should not absolve the wrongdoer from liability for damages caused by that undiscovered fraud. Thus, we find that this theory of liability was improperly rejected by the trial court.

*Id.* at 316. Hence, in *Woodward*, we rejected the trial court's determination that privity is required between contractors and subsequent third-party homebuyers in actions sounding in fraud.

Thereafter, in *Valley Forge*, our Court expanded upon the holding in *Woodward* to determine that privity is likewise not required in bringing a cause of action under the UTPCPL. Therein, a condominium association brought an action against a roofing manufacturer under the UTPCPL. In *Valley Forge*, this Court noted, "the most vexing problem presented in [that] appeal [was] the absence of technical privity" between the condominium association and the roofing manufacturer. *Valley Forge*, 574 A.2d at 646. Looking at the language of 73 P.S. § 201-9.2, Pennsylvania's UTPCPL statute, our Court determined "the statute is silent on the significance of privity." *Id.* Thus, we examined the legislative intent and concluded, "the law was passed to substantially enhance the remedies available to consumers as the result of unfair or deceptive business, specifically including the failure to comply with any written guarantee or warranty." *Id.* at 646. We then considered our decision in *Woodward* and concluded:

that strict technical privity was not intended by our legislature to be required to sustain a cause of action under

- 8 -

73 P.S. § 201-9.2. The statute is to be construed broadly to effectuate its general intent to eradicate fraudulent business practices. Consequently, we decline[d] to engraft a requirement of strict technical privity onto a silent statute, especially since no such restriction applies in fraud cases generally.

*Id.* at 647.

In this case, in sustaining Hellings' preliminary objections, the trial court determined:

In the instant case the salient facts are not in dispute. Appellants never spoke with [Hellings]. Appellants never met with any representative of [Hellings]. Appellants did not hire [Hellings] to build the home. Appellants did not purchase the home from [Hellings].

The UTPCPL appears to be silent on the issue of privity. It is silent on whether Appellants need to have contracted with [Hellings], but the act is clear that there must be reliance.

\*          \*          \*

[…] Appellants purchased the home from Matthew and Michelle Witzky in August 2011. The Witzkys purchased the home new from Hellings Builders in 2006. While no privity maybe [sic] required under the UTPCPL, what is required, at least at this stage, is an allegation that the Appellants relied on Hellings['] conduct, deceptive or otherwise. Appellants were very careful in the drafting of their [c]omplaint to allege that the Witzky[s] relied upon representations of Hellings. But even if those representations were made to the Witzky[s], Hellings made no representations to the Appellants.

\*          \*          \*

[The trial court] note[s] that the UTPCPL is silent regarding privity and there are very few, if any, cases addressing this particular issue, *i.e.* a subsequent purchaser of a newly constructed home. **Valley Forge** [] addressed the issue of subsequent purchasers in relation to the UTPCPL and

- 9 -

ultimately found that the Homeowners' Association could bring a private action against the manufacturer despite not having purchased the product directly from the manufacturer. That case differed significantly from the instant matter in that it dealt with the purchase of a specific product, which failed under a warranty that was given directly to the Homeowners' Association. In addition, the Association asked for that product specifically. That is not the case here.

Thus, [the trial court determined the UTPCPL] focus[ses] on reliance. Specifically, [one must make a purchase] 'as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this Act…' **See**, UTPCPL 201-9.2. The [c]omplaint makes clear that the house was purchased from the Witzkys approximately five years after it was built. While Appellants note the advertising Hellings put forth to the Witzky[s], Appellants do not assert anywhere in the [c]omplaint that any representations by the builder were [sic] made to them. Nowhere in the [c]omplaint do Appellants allege that the builder, ever spoke to them. The UTPCPL clearly anticipates that the [p]laintiff relied upon a [d]efendant's representations, methods, or acts. In the instant case, if Appellants relied on anyone it was the seller of the home, the Wit[z]kys.

Trial Court Opinion, 7/21/2015, at 3-5.

We conclude that the trial court erred as a matter of law in sustaining Hellings' preliminary objections on grounds that Hellings made no representations to Appellants. As set forth in detail above, **Woodward** and **Valley Forge** make clear that technical privity is no longer required to assert a cause of action for fraud or a violation of the UTPCPL. However, the trial court consistently referred to that fact. Instead, the focus is on whether reliance on alleged misrepresentations was specially foreseeable. In **Woodward**, we specifically determined that a third-party purchaser of

property is specially foreseeable.  Moreover, reviewing all material facts set forth in Appellants' complaint as true, as well as all inferences reasonably deducible therefrom, as our standard requires, Appellants allege that Hellings generally represented, in printed materials and on Hellings' own website, that it was a reputable builder touting superior quality and construction.  *See* Complaint, at 2-3, ¶¶ 9-11.  Appellants further aver that in the sales agreement with the Witzkys, Hellings stated that the home at issue would include a three-coat stucco system according to International Residential Code standards.  *Id.* at 3-4, ¶¶ 9, 14-15.   However, Appellants maintain that upon inspection by their expert, the stucco system did not comply with those standards and they suffered damage as a result.  *Id.* at 5-7, ¶¶ 27-42.  In support of both their fraud and UTPCPL claims, Appellants assert that they justifiably relied upon Hellings' misrepresentations in purchasing the home.  *Id.* at 9, 11, ¶¶ 64, 75.  Accordingly, based upon our standard of review and the prevailing law, we conclude that Appellants' claims should not have been dismissed on preliminary objections.

Order vacated.  Complaint reinstated.  Case remanded for further proceedings.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/26/2016