George BARNES, Appellant

v.

Warren G. KELLER

v.

Westfield Group, a/k/a, d/b/a, t/a Westfield Insurance Company, Appellee.

Superior Court of Pennsylvania.

Argued Aug. 7, 2012.
Filed Nov. 27, 2012.

Joseph J. Aversa, Philadelphia, for appellant.

Allan C. Molotsky, Philadelphia, for appellee.

BEFORE: SHOGAN, LAZARUS and PLATT *, JJ.

OPINION BY SHOGAN, J.:

Appellant, George Barnes, appeals from the August 1, 2011 order entering summary judgment in favor of Appellee, Westfield Group, a/k/a, d/b/a, t/a Westfield Insurance Company. We reverse and remand for further proceedings consistent with this Opinion.

* Retired Senior Judge assigned to the Superior Court.

The relevant facts of this case were aptly set forth by the trial court as follows:

• At the time of the occurrence giving rise to this litigation, George Barnes (hereinafter "Plaintiff") was employed by McGovern, Inc. as a field service technician. (Plaintiff's Amended Complaint, ¶ 4). McGovern, Inc. maintained a policy of insurance with Westfield, and Plaintiff was an insured under the policy. (Plaintiff's Amended Complaint, 5–6). Plaintiff was assigned to a Wawa convenience store located at 9201 Frankford Avenue, Philadelphia, PA when an unidentified driver backed out of a parking space, striking the Plaintiff. (Plaintiff's Amended Complaint, ¶¶ 7–8).

Dennis McCliver [sic] of McGovern had assigned Plaintiff to the Wawa on the date of the accident to unblock a clogged pipe. (Plaintiff's deposition attached as Exhibit "B" to Defendant's Motion for Summary Judgment, pg. 105 ln. 24 and p. 106 ln. 1). Plaintiff was provided with a McGovern-owned cargo van, attached by tow hitch[1] to an FMC, high-powered jetter. Id. at pg. 58, ln. 9–16, pg. 61, ln. 12–16.

1. The jetter trailer could also be attached to the van with an electrical connection, which controlled the brake lights and turn signals. Id. at pg. 63, ln. 13 and pg. 63, lns. 19–24.

In his deposition, the Division Manager for McGovern, Alan Tulish[,] describes the jetter as "a portable unit that has to be transported from one point to another with another vehicle." (Alan Tulish's deposition attached as Exhibit "C" to Defendant's Motion for Summary Judgment, pg. 25, ln. 3–5). Mr. Tulish further explains that the jetter has a diesel engine fueled separately from the transporting vehicle and that it is "a self-sufficient unit that basically what it's designed to do is go to loca-

tions, be set there and get run by itself and you can just leave it there and use the jetter as needed." Id. at pg. 27, ln. 19–23)[sic]. The van can be positioned anywhere on the site because the jetter is operated separately and independently of the van. Id. at pg. 51, ln. 31–24, pg. 52, ln. 19–23, pg. 53, ln. 5–8, 20–21. Mr. Tulish also testified that all of the equipment necessary to clear a drain should be kept with the jetter.

Upon arriving at the job site, Plaintiff testified that he parked the van, turned on the flashers and beacon,[2] and retrieved his gloves, hooks and cones from the van. (Plaintiffs deposition attached as Exhibit "B" to Defendant's Motion for Summary Judgment, pg. 134 ln. 20–21 and p. 135–36). He then cordoned off his work area with the cones according to McGovern safety procedure and notified Wawa's manager of his arrival. Id. at pg. 197, ln. 11–19.

2. Mr. Tulish and Mr. Cliver testified that McGovern safety procedures do not require technicians to engage the flashers or strobe lights on the van while the jetter is in use. (Alan Tulish's deposition attached as Exhibit "C" to Defendant's Motion for Summary Judgment, pg. 44, ln. 11–13; Dennis Cliver's deposition attached as Exhibit "D" to Defendant's Motion for Summary Judgment, pg. 71, ln. 5–11).

After Plaintiff spoke with Wawa's manager, Plaintiff then lifted the grate covering the blocked drain, realized he needed a pump truck in addition to the jetter to complete the job, and notified Dennis Cliver of McGovern. (Plaintiff's deposition attached as Exhibit "B" to Defendant's Motion for Summary Judgment, pg. 146, ln. 18–23, pg. 147, ln. 8–10, pg. 144, ln. 20–24). Plaintiff testified that Mr. Cliver instructed Plaintiff to "see what [he] could do" while waiting

for the pump truck to arrive. *Id.* at pg. 146, ln. 4–5, pg. 151, ln. 7–10. Plaintiff explained that after he had located the blocked pipe with his hook, he was attempting to feed the hose from the jetter into the pipe when he was struck by an unidentified vehicle. *Id.* at pg. 154, ln. 2–6. Plaintiff could not recall whether or not the pressure on the jetter had been set at the time he was hit. *Id.* at pg. 155, ln., 5–7, pg. 169, ln. 15–18.

When Plaintiff was struck by the unidentified driver, the force of the impact caused Plaintiff to fall to the left of the storm drain, and he proceeded to yell at the driver of the vehicle and then went to retrieve his cell phone from the van. *Id.* at pg. 170, ln. 7–14, pg. 171, ln. 16–24. Following the accident, Ron Yergey, another McGovern employee, arrived at the scene with the pump truck. He notified Mr. Tulish that nothing had been done to clear the drain, and Plaintiff was waiting for him to arrive with the pump truck. (Alan Tulish's deposition attached as Exhibit "C" to Defendant's Motion for Summary Judgment, pg. 56, ln. 12–20).

Plaintiff commenced this action by filing his Complaint on May 28, 2010. (See Docket). After Westfield filed Preliminary Objections to Plaintiff's Complaint on July 6, 2010, Plaintiff filed an Amended Complaint on July 23, 2010. *Id.* Westfield filed Preliminary Objections to Plaintiff's Amended Complaint on August 19, 2010, which were overruled on September 23, 2010. *Id.* Thereafter, Westfield filed an Answer with New Matter and Counterclaim to Plaintiff's Amended Complaint on October 13, 2010. *Id.* Plaintiff filed Preliminary Objections to Westfield's Answer with New Matter and Counterclaim on November 2, 2010, Westfield filed an Answer on November 22, 2010, and Plaintiff filed a Reply on December 2,

2010. *Id.* On December 9, 2010, this Court overruled Plaintiff's Preliminary Objections. *Id.*

Westfield filed a Motion to Dismiss on January 19, 2011, Plaintiff filed an Answer on February 9, 2011, and Defendant filed a Brief in Support of the Motion to Dismiss on February 11, 2011. *Id.*

Westfield filed its Motion for Summary Judgment on June 6, 2011, Plaintiff filed an Answer on July 7, 2011, and Westfield filed a Reply in Opposition to the Motion for Summary Judgment on July 15, 2011. *Id.*

On [August 1], 2011, the Court granted the Motion for Summary Judgment submitted by Defendant Westfield and denied Plaintiff's Motion for Summary Judgment, thereby dismissing Plaintiff['s] Complaint. *Id.*[3] Plaintiff[ ] timely appealed and filed [his] Statement of Matters Complained of on Appeal on September 19, 2011. *Id.*

3. The Docket Entry of August 19, 2011 notes that the parties agreed to dismiss Defendant Keller from the case at the Settlement conference on June 9, 2011 as the discovery taken in the case suggested that Keller was incorrectly identified as the driver of the vehicle.

Trial Court Opinion, 2/13/12, at 1–4.

On appeal, Appellant presents the following two issues for this Court's consideration:

1. When a commercial motor vehicle insurance policy contains ambiguous and internally inconsistent language defining who is an "insured," what is an "uninsured motor vehicle," and who is entitled to recover uninsured motorist benefits, is an individual entitled to uninsured motorist benefits when he is struck by an unin-

sured motorist while using equipment on a trailer mechanically and electronically connected to a cargo van?

2. By deciding motions and other matters in a case in which the ruling judge's spouse is employed as an attorney by counsel for a party, and failing to disclose this relationship to the parties, does a judge create an appearance of impropriety that warrants that the court's rulings be vacated to permit the matter to be reassigned to a judge whose impartiality is not questioned?

Appellant's Brief at 4.

Appellant first argues that summary judgment was improper because the motor vehicle insurance policy at issue ("the policy") contains ambiguous language defining an insured, an uninsured motor vehicle, and who is entitled to recover uninsured motorist benefits.[1] In reviewing the grant of a motion for summary judgment, we use the following standard and scope of review:

> We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court

committed an error of law or abused its discretion.

*Erie Insurance Exchange v. Larrimore*, 987 A.2d 732, 736 (Pa.Super.2009) (citation omitted).

■ Appellant claims that the trial court erred when it concluded that the jetter was not a motor vehicle, that Appellant was not "vehicle oriented" and not "occupying" a vehicle when the accident occurred, and that he was, therefore, not eligible to recover uninsured motorist benefits under the policy. Pursuant to our standard of review and reviewing the record in the light most favorable to Appellant, we conclude genuine issues of fact are present that preclude summary judgment.

A motor vehicle is defined as "[a] vehicle which is self-propelled except an electric personal assistive mobility device or a vehicle which is propelled solely by human power." 75 Pa.C.S.A. § 102. A trailer is "[a] vehicle designed to be towed by a motor vehicle." *Id.* Further, a vehicle is "[e]very device in, upon or by which any person or property is or may be transported or drawn upon a highway, except devices used exclusively upon rails or tracks. The term does not include a self-propelled wheel chair or an electrical mobility device operated by and designed for the exclusive use of a person with a mobility-related disability." *Id.*

This Court has previously stated that "there is no question that an unattached trailer is not a motor vehicle. Likewise, there is no question that a truck tractor is a motor vehicle. The problem however, arises when that trailer is attached to a truck tractor which is then operated as one unit. The Code does not specify whether

---

1. Appellee argues that this issue is waived as it was not included in Appellant's Pa.R.A.P. 1925(b) statement. Appellee's Brief at 26. However, we conclude that issue is fairly subsumed in Appellant's Pa.R.A.P. 1925(b) statement wherein he alleges that the trial court erred in interpreting the meaning of the terms and definitions in the policy. Appellant's Pa. R.A.P. 1925(b) statement, at ¶ 1.

the resulting 'tractor trailer' is a motor vehicle or not." *Callahan v. Federal Kemper Insurance Co.,* 390 Pa.Super. 201, 568 A.2d 264, 266 (1989). Reiterating that the purpose of the MVFRL is to provide broad coverage to the policyholder and that the MVFRL is to be liberally interpreted in order to effectuate that purpose, the *Callahan* Court then proceeded to hold that a tractor trailer is a motor vehicle. *Id.* at 267. Appellant argues that the tractor trailer analysis is appropriate here where we have a van towing the jetter. Appellant's Brief at 12. We agree, insofar as we conclude that a trailed vehicle can be a motor vehicle pursuant to *Callahan.*[2]

Also, the trial court determined that Appellant was not "occupying" a motor vehicle. The policy defines occupying as "upon, getting in, on, out or off." Policy, Additional Definitions, F–2. In *Utica Mutual Insurance Co. v. Contrisciane,* 504 Pa. 328, 473 A.2d 1005 (1984), our Supreme Court explained:

> when a person is engaged in the lawful use of an insured vehicle, he will be considered to be "occupying" that vehicle within the meaning of the policy, provided he can meet the following criteria:
>
> (1) there is a causal relation or connection between the injury and the use of the insured vehicle;

> (2) the person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it;
>
> (3) the person must be vehicle oriented rather than highway or sidewalk oriented at the time; and
>
> (4) the person must also be engaged in a transaction essential to the use of the vehicle at the time.

*Utica Mutual Insurance Co.,* 504 Pa. at 336, 473 A.2d at 1009 (citation omitted). The trial court concluded that Appellant could not satisfy any prong of this test other than that he was in close proximity to the vehicle. Trial Court Opinion, 2/13/12, at 7. We disagree.

When we review the facts of this case in the light most favorable to Appellant, we cannot conclude that Appellee is entitled to judgment as a matter of law on this issue. The record reflects that Appellant was engaged in work that required using the jetter, which as noted above was attached to a van and could be construed as a motor vehicle, at the time he was struck; he was in close proximity to the vehicle at the time he was struck; he was using the hose attached to the jetter—a process essential to the use of the vehicle and which required him to be vehicle oriented.[3]

 In summary, a trailed vehicle can be a motor vehicle. *Callahan,* 568 A.2d at

---

**2.** While the trial court cites to Mr. Tulish's deposition, wherein Mr. Tulish stated that the jetter is "a self-sufficient unit that basically what it's designed to do is go to locations, be set there and get run by itself and you can just leave it there and use the jetter as needed" (Trial Court Opinion, 2/13/12, at 2), that situation did not occur here. There is no evidence that the jetter was separated from the van as a stand-alone vehicle. At all times, the jetter was attached to the van, making it similar to a tractor trailer contemplated as a motor vehicle under *Callahan.* Further, there was evidence that in order for Appellant to operate

the jetter's safety flashers, the jetter needed to be connected to the van with the van's flashers activated. 4/14/11, at 43.

**3.** *Compare Curry v. Huron Ins. Co.,* 781 A.2d 1255 (Pa.Super.2001) (concluding that activating a beacon light on top of the insured vehicle while working twenty feet away on an airport runway, was not sufficient to establish that the insured himself was vehicle oriented when he was struck by another vehicle outside the insured vehicle).

266. Under the analysis in *Utica Mutual Insurance Co.*, a reasonable person could conclude that Appellant was vehicle oriented when he was struck. Therefore, there remain genuine questions of fact as to whether Appellant, under the facts presented here, is entitled to recover uninsured motorist benefits. Accordingly, because there are genuine issues of fact, we reverse the order granting summary judgment and remand for further proceedings.[4]

Order reversed. Case remanded. Jurisdiction relinquished.

LAZARUS, J., files a Concurring Opinion.

## CONCURRING OPINION BY LAZARUS, J.

I fully join in the majority's decision to reverse the trial court's order granting Appellee summary judgment and to remand this case on the basis that a reasonable person could conclude that Appellant was vehicle-oriented when he was struck and injured by an unidentified driver. I write separately, however, to express my disapproval of the trial judge's failure to disclose his wife's employment with the defense law firm prior to the decision on the motion for summary judgment. Not only did the trial judge err on the law as applied to the facts of this case, but he failed in his professional responsibility as set forth in the Code of Judicial Conduct and, as a result, prejudiced the litigants.

Here, Judge Tereshko failed to disclose in open court to the parties that his wife had been an attorney at the law firm, Post & Schell, which represents the defendant insurance company and was so employed when this motion was filed. In his Memo-

randum of Law in Support of his Motion to Reconsider, Reverse and Recuse, Plaintiff states:

> After receipt of this court's order filed August 1, 2011 (order granting summary judgment), Plaintiff's counsel, in the course of determining to file a Notice of Appeal, learned that Judge Tereshko's spouse is an attorney for the law firm representing Defendant.

Canon 3A(1) of the Code of Judicial Conduct provides in part:

> Judges should be faithful to the law and maintain professional competence in it. They should be unswayed by partisan interests, public clamor, or fear of criticism.

Code of Judicial Conduct, Canon 3A(1). Moreover, Canon 3C of the Code provides in part: "(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where: (d) he or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person ... (iii) is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding." Code of Judicial Conduct, Canon 3C(1)(d)(iii).

Canon 3C, like the whole of the Code of Judicial Conduct, does not have the force of substantive law, but imposes standards of conduct upon the judiciary to be referred to by a judge in his self-assessment of whether he should volunteer to recuse from a matter pending before him. *Reilly v. SEPTA*, 507 Pa. 204, 489 A.2d 1291 (1985), overruled on other grounds as stated in, *Gallagher v. Harleysville Mut. Ins.*

---

4. In light of our disposition of Appellant's first issue, we need not address Appellant's second issue. However, we note our disapproval of the trial judge's failure to disclose his rela-

tionship to Appellee's counsel and remind him of his obligation pursuant to Pennsylvania Code of Judicial Conduct Canon 3(c).

*Co.*, 421 Pa.Super. 192, 617 A.2d 790 (1992).

Judge Tereshko states that in addition to the recusal issue having no merit, it is also waived because plaintiff did not raise it until after summary judgment was granted. However, as the plaintiff correctly states, he did not become aware of the judge's wife's connection to defendant's law firm *until after judgment was entered* and then only by happenstance. Had the judge at the outset of the matter properly disclosed the potential conflict, the parties would have been aware of it before entry of summary judgment and could have raised it in a timely fashion. Where the court has a duty to disclose, the failure of the party to raise the issue cannot constitute waiver.

Although the fact that a lawyer in a proceeding is affiliated with a law firm with which a lawyer-relative of the judge is affiliated *does not of itself* disqualify the judge under Canon 3C, *see* **Note** to Canon 3C(1) (emphasis added), it was Judge Tereshko's affirmative duty to disclose the fact that his wife works as an attorney for the defense firm so that the parties could then investigate the matter and decide whether further action (i.e., a motion for recusal) was warranted. *See Reilly, supra* (when circumstances during trial raise questions of trial judge's bias or impartiality, it is duty of party to allege by petition the bias, prejudice or unfairness necessitating recusal). Although recusal may not be *mandated* in cases such as this one, the objective standard is whether a reasonable *minority* of litigants appearing before the tribunal would believe that the judge could be fair and impartial. In fact, Canon 3C sets forth an objective standard regarding recusal: no matter how the judge himself feels, if his impartiality might reasonably be questioned, recusal is required. The question, therefore, is not how the judge appraises the situation but how a detached observer, the common law's "reasonable man," would appraise it.[1] The party claiming that the judge should have recused himself is therefore under no obligation to show any actual prejudice—that is, that subjectively, or in fact, the judge was not impartial; it is enough to show that a reasonable observer might have questioned the judge's impartiality.

Here, Judge Tereshko's conclusion, based on his personal knowledge that his wife had no financial interest in the matter, is nothing short of *post hoc* reasoning and highlights the difficulty which results from a tribunal's lack of disclosure. As a result of his actions, I believe that the following two significant ethical issues are raised: (1) doubt regarding the trial court's transparency; and (2) the lack of recourse for the aggrieved party to test the conclusion of no partiality or bias by discovery, should he so desire.

Where a court has specific knowledge of a private matter or situation in which his or her impartiality may reasonably be questioned, it is his duty to disclose that information to the parties. Because Judge

---

1. In the recent decision, *Miles v. Ryan*, 697 F.3d 1090, 1091 (9th Cir.2012), the United States Court of Appeals for the Ninth Circuit reiterated the proper recusal standard for determining whether a judge's "impartiality might be *reasonably* questioned" as follows: [We] ask whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned.... The "reasonable person" is not someone who is hypersensitive or unduly suspicious, but rather is a well-informed, thoughtful observer. The standard must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice. *Id.* at 1091 (citing *United States v. Holland*, 519 F.3d 909, 913 (9th Cir.2008)).

Tereshko's actions prejudiced the parties, I would not only join the majority in noting my disapproval, but vacate the trial court's entry of summary judgment and remand the matter to allow the plaintiff to create a record for a full hearing on his recusal motion.[2]

---

**2.** Although I would be inclined to recommend assignment of a new trial judge to the case upon remand, I am well aware of our Supreme Court's prohibition of such a procedure. *See Commonwealth v. Whitmore,* 590 Pa. 376, 912 A.2d 827 (2006); *see also Reilly, supra* at 1298 (Superior Court erred when it *sua sponte* directed that different trial judge take over a case for alleged bias in violation of Canon 3C; Supreme Court declared procedure "inappropriate and preclude[d] its use.").