J-A11029-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| GLENN AND WENDY DIEHL, H/W AND DANIEL AND SUSAN SCOTT, H/W AND GAYATHRI AND SRIRAM KRISHNAN, H/W AND RASHMI RADHAKRISHNAN AND LISA PARVISKHAN AND JOSEPH AND ANN WORRELL, H/W, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| THE CUTLER GROUP, INC., | |
| APPEAL OF: JOSEPH AND ANN WORRELL, H/W | |
| | No. 2302 EDA 2015 |

Appeal from the Order Entered December 22, 2014
In the Court of Common Pleas of Chester County
Civil Division at No(s): 2010-08568

BEFORE:  SHOGAN, MUNDY, and FITZGERALD,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED JULY 18, 2016**

Appellants Joseph and Ann Worrell ("the Worrells"), husband and wife, appeal from the order entered on December 22, 2014, in the Chester County Court of Common Pleas that granted summary judgment in favor of Appellee, The Cutler Group, Inc. ("Cutler").  After careful review, we affirm.

A prior panel of this Court summarized the relevant facts and procedural history of this matter as follows:

_____

[*]  Former Justice specially assigned to the Superior Court.

The Worrells, along with several other groups of plaintiffs,[1] commenced this litigation in 2010, asserting breach of contract, breach of express warranty, breach of implied warranty, and violation of the Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 P.S. §§ 201-1-201-9.3.2.[2] According to the plaintiffs, Cutler constructed their homes using an inferior stucco cladding system, which permitted moisture infiltration resulting in structural damage to their homes.

[1] Plaintiffs included the following: Glenn and Wendy Diehl, h/w; Daniel and Susan Scott, h/w; Gayathri and Sriram Krishnan, h/w; Rashmi Radhakrishnan and Lisa Parviskhan; and Joseph and Ann Worrell, h/w.

[2] In February 2011, plaintiffs filed an amended complaint. In it, the Worrells abandoned their claim for breach of contract.

In July 2011, the trial court sustained certain preliminary objections filed by Cutler, dismissing the Worrells' claims with prejudice. The Worrells filed a motion for reconsideration. Thereafter, in January 2013, the trial court granted reconsideration, reversed its prior determination, and overruled the preliminary objections, thus reinstating the Worrells' claims.

Throughout this period, settlement negotiations proceeded. In March and December 2013, Cutler submitted settlement conference memoranda. From these, we infer that the Scotts, the Diehls, as well as Mr. Radhakrishnan and Ms. Parviskhan agreed to settlement terms with Cutler. Thus, in January 2014, the remaining plaintiffs were the Worrells and the Krishnans.[3]

[3] The March 2013 memorandum states explicitly that the Scotts settled with Cutler. This is confirmed by the Chester County docket, which indicates that, in September 2012, this matter was discontinued as to plaintiffs Daniel and Susan Scott. The March 2013 memorandum also sets forth the terms of settlement offers extended to the Diehls, Mr. Radhakrishnan, and Ms. Parviskhan, but suggests the offers were rejected. Nevertheless, the December 2013 memorandum does not identify these plaintiffs and

omits reference to pending settlement negotiations with them, focusing instead on the Worrells and the Krishnans. Unfortunately, however, the docket is silent regarding any disposition of the claims alleged by the Diehls, Mr. Radhakrishnan and Ms. Parviskhan.

In April 2014, Cutler filed a motion for summary judgment, limited to the Worrells, asserting their claims were precluded by a settlement agreement reached in a parallel case brought by the Worrells' insurance carrier. The trial court denied the motion, noting that the terms of the settlement agreement did not extend to claims for damages not reimbursed by their insurance.

In September 2014, Cutler filed a second motion for summary judgment, limited to the Worrells. Cutler noted that the Worrells did not purchase their home directly from Cutler. According to Cutler, the absence of privity between the Worrells and Cutler extinguished the Worrells' claims. The trial court granted Cutler's motion on this ground and dismissed the Worrells' claims with prejudice.

***Worrell v. The Cutler Group***, 263 EDA 2015, 125 A.3d 451 (Pa. Super. filed July 16, 2015) (unpublished memorandum at 1-3) (internal citations to the record omitted). Following the order entering summary judgment, the Worrells filed an appeal to this Court. In our July 16, 2015 memorandum, we quashed the appeal because the order from which the Worrells appealed did not dispose of all claims and all parties, and was, therefore, not a final order. ***Id***. at 6.

Subsequently, on July 21, 2015, each remaining party, aside from the Worrells, discontinued their suits against Cutler, and the December 22, 2014 order became final. As the only plaintiffs remaining, the Worrells filed a

notice of appeal on July 30, 2015. Both the Worrells and the trial court complied with Pa.R.A.P. 1925.

On appeal, the Worrells raise one issue for this Court's consideration:

Whether the Trial Court Committed an Error of Law in Granting [Cutler's] Motion for Summary Judgment and Dismissing Count XIX of [the Worrells'] Amended Complaint asserting a cause of action for [Cutler's] Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 et seq.

The Worrells' Brief at 4.[1]

The procedure for pursuing a motion for summary judgment and the standard of review of the disposition of said motion are well settled:

Our standard of review of an order granting summary judgment requires us to determine whether the trial court abused its discretion or committed an error of law, and our scope of review is plenary. **Petrina v. Allied Glove Corp.**, 46 A.3d 795, 797–798 (Pa.Super.2012) (citations omitted). We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. **Barnes v. Keller**, 62 A.3d 382, 385 (Pa.Super.2012), citing **Erie Ins. Exch. v. Larrimore**, 987 A.2d 732, 736 (Pa.Super.2009) (citation omitted). Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. **Id**. The rule governing summary judgment has been codified at Pennsylvania Rule of Civil Procedure 1035.2, which states as follows.

**Rule 1035.2. Motion**

After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any

---

[1] The Worrells do not appeal the dismissal of any other count in their complaint.

party may move for summary judgment in whole or in part as a matter of law

> (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or
>
> (2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. 1035.2.

Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. **Babb v. Ctr. Cmty. Hosp.**, 47 A.3d 1214, 1223 (Pa.Super.2012) (citations omitted), *appeal denied*, 65 A.3d 412 (Pa.2013). Further, failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. **Id**.

> Thus, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a prima facie cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

**Id.**, citing **Reeser v. NGK N. Am., Inc.**, 14 A.3d 896, 898 (Pa.Super.2011), quoting **Jones v. Levin**, 940 A.2d 451, 452-454 (Pa.Super.2007) (internal citations omitted).

*Cadena v. Latch*, 78 A.3d 636, 638-639 (Pa. Super. 2013) (internal quotation marks omitted).

We next observe that a private cause of action is explicitly authorized by the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1 *et seq*. Section 201-9.2 provides, in relevant part, as follows:

**§ 201-9.2. Private actions**

(a) Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3[1] of this act, may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper. The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.

[1] 73 P.S. § 201-3.

73 P.S. § 201-9.2(a). Section 201-3 cross references clause 4 of section 201-2 that defines unfair methods of competition and unfair or deceptive acts or practices. *See* 73 P.S. § 201-2(4).

Additionally, we point out that:

The UTPCPL is Pennsylvania's consumer protection law and seeks to prevent unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. The purpose of the UTPCPL is to protect the public from unfair or deceptive business practices. Our Supreme Court has stated courts should liberally construe the UTPCPL in order to effect the legislative goal of consumer protection. The UTPCPL provides a private right of action for anyone who suffers any ascertainable

loss of money or property as a result of an unlawful method, act or practice.

***Fazio v. Guardian Life Ins. Co. of America***, 62 A.3d 396, 405 (Pa. Super. 2012) (citations omitted). "To bring a private cause of action under the UTPCPL, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." ***Yocca v. Pittsburgh Steelers Sports, Inc.***, 854 A.2d 425, 438 (Pa. 2004).

In the Worrells' amended complaint they alleged that Cutler engaged in the following unfair or deceptive trade practices:

134. Due to the defective conditions set forth [in the complaint, Cutler] has violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law, in that [Cutler]:

a. represented that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have;

b. represented that goods or services are of a particular standard, quality or grade when they were another;

c. failed to comply with the terms of a written guarantee or warranty given to the buyer at, prior to, or after a contract for the purchases of goods or services; and

d. made improvements on tangible, real or personal property, of a nature or quality inferior to or below the standard of that agreed to in writing.

The Worrells' Amended Complaint, 2/25/11, at ¶ 134; ***see also generally*** 73 P.S. § 201-2(4)(v), (vii), (xiv), (xvi).

Here, the trial court thoroughly addressed the issue on appeal in its order granting Cutler's motion for summary judgment:

> Finally, Count XIX of the Amended Complaint alleges a violation of the Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1 *et seq*. (UTPCPL). Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce as defined in 73 P.S. § 201-2 of the UTPCPL is unlawful. 73 P.S. § 201-3. "Unfair methods of competition" and "unfair or deceptive acts or practices" are defined under 73 P.S. § 201-2 and encompass 21 different types of conduct. Anyone who purchases goods or services for personal, family or household purposes and suffers any ascertainable loss of money, property, real or personal, as a result of the use or employment of a method, act or practice declared unlawful by 73 P.S. § 201-3, as defined in 73 P.S. § 201-2, may bring a private action to recover actual damages or $100, whichever is greater. 73 P.S. § 201-9.2(a). In order to be successful on a claim under the UTPCPL, a plaintiff must prove that the defendant engaged in an "unfair method of competition" or "unfair or deceptive acts or practice" as defined in the UTPCPL and that the plaintiff suffered harm as a result of that conduct. Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 438 (Pa. 2004).
>
> The intent of the UTPCPL is to enhance the protection of the public from unfair and deceptive trade practices. Gabriel v. O'Hara, 368 Pa.Super. 383, 388 & n.6, 534 A.2d 488, 491 & n.6 (1987). The prevailing intent of the UTPCPL is to prevent fraud and the law should be liberally construed so as to serve that purpose. Gabriel, at 388, 534 A.2d at 491. There is no strict technical requirement that there be privity between the party suing and party being sued in an action under the UTPCPL. Valley Forge Towers Smith Condominium v. Ron-Ike Foam Insulators, Inc., 393 Pa.Super. 339, 348, 574 A.2d 641, 645 (1990).
>
> In Valley Forge Towers, a roofing repair contractor entered into a contract with a condominium association to repair their roof. The contract specified that the roofing membrane would be manufactured by Mameco. After the roof was completed, Mameco provided a ten year warranty directly to the condominium association. After two years, the roof began to

leak. Neither Mameco nor the contractor honored the warranty and the condominium association brought an action under the UTPCPL against the roofer and Mameco.

The Superior Court permitted the claim under the UTPCPL to go forward against Mameco despite the fact that the condominium association did not have a contract directly with Mameco. The Superior Court opined that based upon the contract between the roofer and the condominium association, Mameco had "unequivocal notice" that the condominium association was the actual intended beneficiary of the warranty. Valley Forge Towers, at 346, 574 A.2d at 646.

> A contractor may be sued for fraud in absence of strict privity when the third party was "specifically intended" to rely upon the fraudulent conduct or when the reasonable reliance of a third party on the fraudulent conduct was "specially foreseeable".

Valley Forge Towers, at 349, 574 A.2d at 646, *citing* Woodward v. Dietrich, 378 Pa.Super. 111, 548 A.2d 301, 312-316 (1988). Mameco issued the warranty directly to the condominium association and privity would not be necessary to allow the condominium association to sustain an action against Mameco for damages in tort asserting fraud. Valley Forge Towers, at 349 -50, 574 A.2d at 646.

Unlike Valley Forge Towers, there is no evidence of record at bar to suggest that The Cutler Group had "unequivocal notice" that the Worrells were the intended beneficiaries of the warranty. There is no evidence of record that the Worrells were "specifically intended" to rely upon the alleged fraudulent conduct of The Cutler Group. In fact, the Worrells failed to make any allegation of fraud on the part of The Cutler Group. The allegations contained in paragraph 134 of the Amended Complaint focus on representations and warranties given to the Kings, the original purchasers of the home. Absent any allegation of fraudulent conduct on the part of The Cutler Group directly involving the Worrells, this claim cannot go forward.

Trial Court Order, 12/22/14, at 3-4 n.1.

We agree with the trial court. There is no evidence that the Worrells were promised anything or detrimentally relied upon any representations made by Cutler. The Worrells were strangers to the contract between Cutler and the original purchasers. Cutler had no notice of the Worrells as subsequent purchasers. Moreover, while the Worrells argue that it was foreseeable that the house would be resold by the original purchasers,[2] such a construct is true of all goods capable of being transferred to a subsequent purchaser. The Worrells' interpretation goes beyond the liberal interpretation that we are to give UTPCPL; the Worrells were never "**specially** intended" or "**specially** foreseeable" beneficiaries as described in **Valley Forge Towers**. The Worrells were ordinary subsequent purchasers to whom Cutler made no representations. Under the facts presented here, to conclude that Cutler is liable to the Worrells, subsequent purchasers who were strangers to the contract between Cutler and the original purchaser, could place Cutler in a position of warrantor to all subsequent purchasers. **Valley Forge Towers** does not support the Worrells' argument that they were entitled to bring a private claim under the UTPCPL because the Worrells were not **specially** foreseeable.[3]

---

[2] The Worrells' Brief at 10.

[3] We also distinguish **Woodward v. Dietrich**, 548 A.2d 301 (Pa. Super. 1988), a case upon which **Valley Forge Towers** relies. In that case, the Woodwards filed a civil complaint against Smith, a sewer installer, and the

*(Footnote Continued Next Page)*

*Valley Forge Towers* provides that while strict privity is not a prerequisite, the use of the words "specially intended" or "specially foreseeable" reveal that one must be more than an ordinary subsequent purchaser. Thus, pursuant to *Valley Forge Towers*, we conclude that the UTPCPL is not to be read so expansively that it could be construed to hold manufacturers liable to subsequent purchasers absent the **special**

*(Footnote Continued)* ───────────

Dietrichs, the homeowners/sellers, alleging causes of action for intentional, negligent and/or unintentional misrepresentations and breach of warranty in connection with the sale of a house. *Woodward*, 548 A.2d at 303. The Woodwards purchased the home from the Dietrichs and two years later the basement flooded. *Id*. In their complaint, "[t]he Woodwards alleged that their basement had been flooded and damaged two years after they purchased their home from the Dietrichs because either or both of the defendants (the Dietrichs or Smith) had fraudulently misrepresented and concealed the fact that the grey water sewage sewer connection had not been completed by Smith in the manner indicated in the township records and communicated to the Woodwards by the Dietrichs during their negotiations relating to their purchase of the Dietrichs' residence." *Id*. The Woodwards relied on those representations. *Id*. at 303, 310. The trial court granted the preliminary objections filed by defendants the Dietrichs and Smith and dismissed the complaint. *Id*. at 304. This Court reversed and reinstated the complaint finding that, while there was no privity, a subsequent purchaser's reliance on the representations made by the seller and documents recorded in the township regarding sewer installation in the home **was specially foreseeable**. *Id*. at 310 (emphasis added). In the case at bar, no such representations were made to the Worrells, and there was nothing specially foreseeable about the Worrells' subsequent purchase of the house. Furthermore, we note that *Woodward* dealt with claims of fraudulent misrepresentation and concealment, not the UTPCPL directly. Thus, *Woodward* is distinguishable.

relationship discussed above.[4]

After review, we discern no error of law or abuse of discretion in the trial court's ruling in this matter. Accordingly, we affirm the order granting summary judgment in favor of Cutler.

Order affirmed.

Justice Fitzgerald Concurs in the Result in this Memorandum.

Judge Mundy files a Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/18/2016

---

[4] As this Court has previously stated:

> Particular care must be taken that what is being sought is not, in the words of Justice Cardozo, 'liability in an indeterminate amount, for an indeterminate time to an indeterminate class.'

**Woodward**, 548 A.2d at 303 (quoting **Mill-Mar, Inc. v. Statham**, 420 A.2d 548, 551, (Pa. Super. 1980) (quoting **Ultramares Corp. v. Touche**, 255 N.Y. 170, 178, 174 N.E. 441, 444 (1931)).