J-A08032-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| TROY DENGLER AND LYNNEA DENGLER | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 1616 EDA 2024 |
| NATIONWIDE PROPERTY AND CASUALTY INSURANCE COMPANY | : | |

Appeal from the Order Entered May 21, 2024
In the Court of Common Pleas of Carbon County
Civil Division at No(s):  20-0644

BEFORE:  LAZARUS, P.J., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                    **FILED AUGUST 6, 2025**

Troy and Lynnea Dengler (collectively, "the Denglers") appeal from the order granting summary judgment in favor of Nationwide Property and Casualty Company ("Nationwide").  We affirm.

The trial court provided the following factual history:

> [I]n September [] 2015, Troy Dengler [("Troy")], while in his employ with Brother's Auto Transport [("Employer")], was in the process of unloading his car carrier on Township Line Road, Upper Darby, Delaware County, Pennsylvania, when he was struck by a vehicle driven by Niall McDonald, while in his employ with Kelly General Contracting, Inc.  Troy . . . suffered serious physical and emotional injuries as a result of this accident.  Ultimately, in Delaware County, the Denglers settled the action they brought a[gainst] the tortfeasors, Niall McDonald and Kelly General Contracting Inc.[, for $900,000,] and resolved an additional claim under the Pennsylvania Workers' Compensation Act for lost wage and medical care.
>
> At the time of the accident . . ., the Denglers had in place an automobile policy with . . . Nationwide[,] whereon [Troy] was

named as a policy driver. This policy provided for uninsured and underinsured, motor [coverage] with stacked coverage.

After the settlement involving the tortfeasors, the Denglers also settled an underinsured claim with the insurance company for . . .[E]mployer for [the] policy limits. [That policy paid the Denglers $15,000.00.]

The Denglers . . . instituted this action against Nationwide in a two[-]count complaint alleging breach of contract for refusing to pay under the terms of their personal vehicle policy. Nationwide has filed an answer and new matter to that complaint along with a counterclaim in declaratory judgment alleging, *inter alia* that judgment should be declared in favor of Nationwide and against the Denglers on the basis that coverage in this instance is excluded based upon the "regular use exclusion" contained within the Denglers' policy[, which, according to the policy, excludes underinsured motor vehicle coverage for, *inter alia*, "bodily injury suffered while occupying a motor vehicle . . . available for the regular use of[] you . . ., but not insured for [a]uto liability coverage under this policy"]. The Denglers filed a reply to the counterclaim specifically arguing that the "regular use exclusion" is against public policy and[,] even if it were not, the facts of this case do not warrant the application of the regular use exclusion.

The Denglers filed their motion for partial summary judgment [i]n June [] 2021 claiming they are entitled to judgment in their favor on the issue of the regular use exclusion as being violative of the Motor Vehicle Financial Responsibility Law [("MVFRL")[1]]. Alternatively, if not a violation, the facts of the case do not support the applicability of the regular use exclusion.

Nationwide . . . filed a cross motion for summary judgment alleging that the "regular use exclusion" applies to allow for it to deny coverage under the Denglers' policy.

Trial Ct. Op., 5/21/24, at 2-4 (footnotes and some unnecessary capitalization omitted).

_____

[1] ***See*** 75 Pa.C.S.A. §§ 1701-1799.7.

At a hearing on the motions for summary judgment, the parties agreed to rest on a deposition and "examination under oath" of Troy, taken in March 2018 and March 2019, respectively, and to make legal argument. Much of the parties' arguments concerned whether Troy was "occupying" Employer's car carrier ("the car carrier") for purposes of the regular use exclusion in the policy, pursuant to the four-part test set forth in **Utica Mut. Ins. Co. v. Contrisciane**, 473 A.2d 1005, 1009 (Pa. 1984). The parties expressly agreed that there were no factual disputes; rather, all that remained was for the trial court to determine whether Troy's actions constituted "occupying" Employer's vehicle pursuant to the **Utica** test. **See** N.T., 6/24/24, at 4-5.

Following the hearing, the trial court issued an opinion and order granting summary judgment in favor of Nationwide, concluding that, pursuant to **Rush v. Erie Insurance Exchange**, 308 A.3d 780 (Pa. 2024), the "regular use" exclusion was valid and enforceable, and also concluded that at the time of the accident, Troy was occupying a vehicle to which the regular use exclusion applied, and, accordingly, the exclusion precluded coverage. **See** Trial Ct. Op., 5/21/24, at 6-27. **See also** Order, 5/21/24. The Denglers timely appealed, and both they and the trial court complied with Pa.R.A.P. 1925.

The Denglers raise the following issues for our review:

1. Does the regular use exclusion violate the [MVFRL]?

2. When an underinsured motorist claimant is injured while unloading vehicles from the trailer of a car carrier, and the

- 3 -

vehicle is parked and not in operation, do his actions constitute operation of a motor vehicle or any other actions that would meet the third or fourth prongs of the **Utica Mutual** test?

3. Is unloading vehicles from a parked car carrier, which does not require the use of or entail the operation of the truck's cab, a transaction independent of and not essential to the use of the vehicle sufficient to bar an underinsured motorist claim?

Denglers' Br. at 4 (issues re-ordered for ease of disposition).

Our standard of review for orders granting summary judgment is as follows:

We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered.

Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

**Baclit v. Sloan**, 323 A.3d 1, 5–6 (Pa. Super. 2024), *appeal granted*, --- A.3d ---, 2025 WL 1230847 (Pa. Apr. 29, 2025) (internal citation omitted).

As this Court has explained, "Summary judgment is proper where the pleadings, depositions, answers to interrogatories, admissions and affidavits and other materials demonstrate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." **Curry v. Huron Ins. Co.**, 781 A.2d 1255, 1257 (Pa. Super. 2001) (citing, *inter alia*, Pa.R.Civ.P. 1035.1-1035.5).

In their first issue, the Denglers argue the trial court erred in granting summary judgment because the regular use exclusion violates sections 1731 and 1733 of the MVFRL pursuant to *Gallagher v. Geico Indem. Co.*, 201 A.3d 131 (Pa. 2019).

The trial court concluded that the regular use exclusion does not violate the MVFRL because our Supreme court, in *Rush*, held that the regular use exclusion is valid and enforceable under the MVFRL. *See* Trial Ct. Op., 5/21/24, at 6. Indeed, our Supreme Court rejected this argument in *Rush*, and, accordingly, the trial court committed no error in concluding that the regular use exclusion was valid and consistent with the MVFRL. *See Rush*, 308 A.3d at 800-802 (rejecting the argument that sections 1731 and 1733 of the MVFRL prohibit regular use exceptions); *accord Jones v. Erie Insurance Exchange*, 318 A.3d 960, 964-65 (Pa. Super. 2024) (applying *Rush*).

In their second and third issues, the Denglers argue the trial court erred in granting summary judgment in favor of Nationwide because, they argue, Troy was not occupying Employer's vehicle at the time of the accident since he was not vehicle oriented or engaging in a transaction essential to the use of the vehicle at the time.

In *Utica*—the applicability of which neither party contests—our Supreme Court held that the term "occupying" is subject to a four-prong test for ascertaining whether a person is "occupying" the vehicle:

> (1) there is a causal relation or connection between the injury and the use of the insured vehicle;

(2) the person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it;

(3) the person must be vehicle oriented rather than highway or sidewalk oriented at the time; and

(4) the person must also be engaged in a transaction essential to the use of the vehicle at the time.

473 A.2d at 1009.

Because prongs one and two are uncontested, only prongs three and four are germane to the Denglers' appeal, *i.e.*, whether Troy was vehicle oriented at the time of the accident and whether he was engaging in a transaction essential to the use of the vehicle at the time.

For the third prong, *i.e.*, being vehicle oriented, a person can be vehicle oriented when, for example, a person is in front of a vehicle unloading a rifle prior to entering the vehicle. ***See Fisher v. Harleysville Ins. Co.***, 621 A.2d 158, 160 (Pa. Super. 1993). However, exiting a vehicle to conduct an activity unrelated to the vehicle, such as to signal and direct oncoming traffic in the wake of an unrelated accident, renders a person no longer vehicle oriented. ***See Petika v. Transcontinental Ins. Co.***, 855 A.2d 85, 90 (Pa. Super. 2004) (affirming the trial court's conclusion that the plaintiff was not "vehicle oriented," and holding that the trial court did not err in concluding the plaintiff's "own vehicle was extraneous to his efforts" to direct traffic). This Court has also concluded that exiting a vehicle to perform work on a runway does not constitute being vehicle oriented, because the activity is not "directed

towards or in preparation of entering the vehicle." ***Curry***, 781 A.2d at 1258-59. However, a tractor and trailer are together considered part of the same vehicle, and a person's work on an external and attached part of a vehicle constitutes being vehicle oriented, notwithstanding that the person has exited the vehicle. ***See Barnes v. Keller***, 62 A.3d 382, 386-87 (Pa. Super. 2012). ***But cf***. ***Petika v. Transcon. Ins. Co.***, 855 A.2d 85, 90 (Pa. Super. 2004) (holding that the insured was no longer vehicle oriented, but highway oriented, "when he left his vehicle for the purpose of trying to slow and manage oncoming highway traffic").

Regarding the fourth prong (*i.e.*, transactions essential to use of the vehicle): In ***Utica***, our Supreme Court held that a decedent's exiting of his vehicle to comply with statutory requirements to speak to a police officer filling out an accident report in a police vehicle, ninety-seven feet away from the decedent's vehicle, following a minor car accident, was essential to the decedent's continued use of the vehicle. ***See*** 473 A.2d at 1009. ***Cf***. ***Curry***, 781 A.3d at 1259 (activity must be essential to the lawful operation of the vehicle). Use of an external part of the vehicle at the time of injury can be considered a "transaction essential to the use of the vehicle." ***Barnes***, 62 A.3d at 386.

In ***Barnes***, the plaintiff was operating a "jetter"—which was defined as a "portable unit that has to be transported from one point to another with another vehicle," and which "has a diesel engine fueled separately from the

transporting vehicle," but which is attached by tow hitch to the transporting vehicle (in this case, a van)—and this Court held that operation of the jetter constituted a transaction essential to the use of the vehicle. *See* 62 A.3d at 383, 386-87.[2]

The Denglers argue that the trial court erred in granting summary judgment in favor of Nationwide because the third and fourth prongs of the *Utica* test do not apply, and, accordingly, Troy was not occupying the vehicle at the time of the accident; and therefore, the regular use exclusion does not preclude coverage. Specifically, the Denglers argue Troy was not driving the vehicle, nor was he about to drive the vehicle, therefore, he was not vehicle oriented. *See* Denglers' Br. at 14. As such, because Troy was "focused on the trailer, not on any part of the vehicle he could drive," he was not vehicle oriented. *Id*. at 15.

As for the fourth prong, the Denglers' argument is unclear; they do not explain why Troy's actions were not essential to the use of the vehicle at the time of the accident, but they suggest that this was a factual matter that

---

[2] While the issue in *Barnes* hinged on whether Barnes was vehicle oriented, the trial court in *Barnes* held as a matter of law that the jetter was not part of the vehicle and therefore, Barnes could not prove prongs one, three, or four of the *Utica* test. This Court reversed, holding that a factfinder could factually conclude to the contrary. Unlike *Barnes* no factual dispute exists regarding Troy's actions; the only questions in this matter, as the parties agreed below, are questions of law, namely, whether Troy was vehicle oriented and engaged in a transaction essential to the use of the vehicle at the time of the accident. That *Barnes* reversed and remanded based on a genuine dispute of material fact is thus immaterial to the case *sub judice*.

needed to be resolved by a jury. *See* Denglers' Br. at 28-30. Additionally, we glean from other sections of the Denglers' brief that they mean to argue that because Troy was not driving or about to drive the vehicle, he was not engaging in a transaction essential to the use of the vehicle. *See id*. at 14.

The trial court considered the Denglers' arguments and concluded there was no genuine issue of fact or law, and that summary judgment should be entered in favor of Nationwide:

> The facts are not in dispute as to what occurred with Troy . . . and the vehicle he was engaged with. As the driver of this car carrier, he was responsible for delivering vehicles to a dealership in Upper Darby, Delaware County. He had already unloaded five vehicles from his carrier and was in the process of releasing pins to lower the upper ramp to drive the remaining vehicles onto the dealership lot. As he walked towards the rear of the carrier to pull the ramp out, he was struck . . ..

> In *Tyler v. Insurance of [North America]*, 457 A.2d 95 ([Pa. Super.] 1983), the [C]ourt had noted that a person is vehicle oriented and is considered to be occupying a motor vehicle until he severs all connections with it. Likewise, in *McGilley v. Chubb and Son, Inc.*, 535 A.2d 1070 ([Pa. Super.]1987) . . ., the [C]ourt determined that a cab driver, who left his cab to borrow a cigarette and go into a restaurant for lunch, but was unfortunately struck by a bus, was highway, not vehicle oriented, because he "had severed his relationship with his cab at the time of the [accident]." *Id*. at 1075[]. Lastly, the [C]ourt held, in *S[]hultz v. Nationwide Insurance Co.*, 541 A.2d 39[1 (Pa. Super. 1988)], that the driver of a vehicle, who was struck by another vehicle while refilling her gas tank after having run out of gas and had returned from obtaining it, was vehicle oriented. The court went on to state "[b]ecause she was engaged in a transaction essential to [her vehicle's] use, it is beyond serous dispute that she was vehicle oriented any other conclusion would be wholly unrealistic." *Id*. at 393.

> Clearly, all of Troy['s] . . . actions and conduct on the date in question at the time of the accident pertained to his car carrier

and [were] oriented towards that vehicle. Nationwide has met the third prong of the **Utica** test.

＊ ＊ ＊ ＊

Again, the facts here are not in dispute, the Denglers claim that Troy . . . was not engaged in a transaction essential to the use of the car carrier. Nationwide proves otherwise.

The Denglers argue that his unloading of the vehicles from the company car carrier was extraneous to that parked company car carrier. We disagree. The Denglers conclude that Troy['s] . . . job duties required him to unload cars from his truck to deliver them to the dealership. That concession does not make the car carrier extraneous to unloading the vehicles on it. [I]t is part and parcel of the entire operation of the car carrier. . ..

Trial Ct. Op., 5/21/24, at 8-10.

Following our review, we conclude the trial court committed no error of law in granting summary judgment for Nationwide against the Denglers. Initially, we note there is no dispute about what actions Troy was engaged in at the time of his injury, and, further, the parties agreed at the hearing on the summary judgment motions that there is no dispute of fact. **See** N.T., 9/13/21, at 5 (counsel for the Denglers affirmatively stating to the trial court that this is "a question of law"). The undisputed facts are that Troy was at the side of the car carrier pulling one of two pins out of the carrier to release the top level, and he was walking along the side of the rear of the car carrier toward the back of the vehicle to unload cars from the carrier when he was struck by an oncoming vehicle. **See** Troy Dengler Dep., 3/28/18, at 53-55.

Next, we reiterate that only prongs three and four are at issue here. Our review discloses no legal error in the trial court's conclusion that Troy was

vehicle oriented and engaging in a transaction essential to the use of the vehicle at the time of the accident. Troy's use of the ramp portion of the car carrier required him to be vehicle oriented, and it constituted a "transaction essential to the use of the vehicle." In **Barnes**, the plaintiff was using a jetter; specifically, he was feeding a hose from the jetter into a blocked pipe at a Wawa. This Court held that, as with a tractor and trailer, a "trailed vehicle" can be a motor vehicle (including the jetter), and Barnes's use of the jetter hose meant that he was oriented toward the vehicle (namely, the jetter portion). His use of the jetter's hose meant that his actions were "essential to the use of the vehicle at the time," **Barnes**, 62 A.3d at 386-87. Similar to **Barnes**, Troy's use of the pin to operate the ramp attached to his truck that unloaded the cars he was in the midst of delivering were essential to the use of the vehicle at the time. Thus, we find **Barnes**'s reasoning applicable, and conclude that prongs three and four of the **Utica** test are satisfied and that Troy was occupying the vehicle at the time of his injury.

As there is no genuine dispute of material fact, and Nationwide is entitled to judgment as a matter of law, we affirm the order granting summary judgment to Nationwide.[3]

Order affirmed.

---

[3] Because we affirm the trial court's grant of summary judgment on the regular use exclusion, we need not reach Nationwide's assertion that the car-for-hire exclusion precludes coverage.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>8/6/2025</u>