J-S42016-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| AMRO ELANSARI, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : | |
| v. | : : | |
| | : | No. 627 EDA 2019 |
| BEST BUY, LP; DELL, INC. | : | |

Appeal from the Order Entered, January 9, 2019,
in the Court of Common Pleas of Philadelphia County,
Civil Division at No(s): 180702492.

BEFORE: OTT, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.:               **FILED OCTOBER 18, 2019**

## I.     Introduction

Pennsylvania's Unfair Trade Practices and Consumer Protection Law[1] (UTPCPL) gives consumers the right to sue anyone who tricks them into buying or leasing goods or services . . . with one ***BIG*** caveat.  A consumer must use the good or service for mainly personal, family, or household purposes.  Thus, the statute does not cover business-to-business transactions.

The Plaintiff, Buyer, and Class-Representative, Amro Elansari, appeals *pro se* from the order sustaining the preliminary objections of the Seller (Best

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 73 P.S. §§ 201-1 – 201-9.3.

Buy, LP) and the Manufacturer (Dell, Inc.) of a computer Buyer purchased.[2]

He alleges they deceptively marketed that computer and thereby violated the

UTPCPL.  Buyer's amended complaint indicates he used the computer for a

personal purpose, but the trial court, in sustaining the preliminary objections,

exceeded its scope of review by relying upon facts outside Buyer's amended

complaint and overlooked the UTPCPL precedents of this Court.  We therefore

modify the order and remand for further proceedings.

## II.   Facts Alleged in the Amended Complaint

According to the amended complaint,[3] in February of 2018, Buyer was

in the market for a new, "powerful, desktop computer, [and] found a deal for

such a computer for $380 — in store only — at Best Buy."  Amended Complaint

at 6.  Buyer intended to use the new computer for streaming on Twitch.tv,[4] a

---

[2] We amended the caption to reflect the case's status as a class action and to identify Defendant/Seller as "Best Buy, LP" (instead of "Best Buy, Inc."). ***See Piehl v. City of Philadelphia***, 987 A.2d 146 (Pa. 2009) (holding that the caption may be amended, even after the expiration of the statue of limitations, to identify the defendant correctly).  For ease of discussion, we hereafter refer collectively to Buyer and the Class as simply "Buyer."

[3] Under our scope of review, which we discuss in detail below, we must accept the facts alleged in the amended complaint as true when reviewing an order dismissing a case on preliminary objections.

[4]  Wikipedia describes the website Twitch.tv as follows:

> **Twitch** (stylized as **twitch**) is a live streaming video platform owned by Twitch Interactive, a subsidiary of Amazon.  Introduced in June 2011 as a spin-off of the general-interest streaming platform, Justin.tv, the site primarily focuses on video game live streaming, including

purpose he alleges was "personal in nature [that did] not rise to the level of . . . commercial use." *Id.* at 1. Buyer compared his purpose "to Skyp[ing] regularly with people — a very consumer-like use . . . ." *Id.*

Purchasing an identical computer directly from Manufacturer would have cost at least $500. *Id.* So Buyer went to Seller's brick-and-mortar store to take advantage of the lower, in-store-only price. Thus, he claims that Seller "lured [him] into [its] store with an advertisement for [Manufacturer's] computer on sale for $380." *Id.* at 1.

Once Buyer entered the store, Seller's employee said the advertised, $380 computer was unavailable. The employee offered Buyer another one of Manufacturer's computers for $500 instead. *Id.* Buyer purchased the higher-priced computer from Seller. *Id.*

---

broadcasts of eSports competitions, in addition to music broadcasts, creative content, and more recently, "in real life" streams. Content on the site can be viewed either live or via video on demand.

\* \* \* \* \*

By 2015, Twitch had more than 1.5 million broadcasters and 100 million viewers per month. As of Q3 2017, Twitch remained the leading, live-streaming video service for video games in the US, and had an advantage over YouTube Gaming. As of May 2018, it had 2.2-million broadcasters monthly and 15-million daily active users, with around a million average concurrent users.

WIKIPEDIA: THE FREE ENCYCLOPEDIA, entry of "Twitch.tv", available at https://en.wikipedia.org/wiki/Twitch.tv (last visited 9/16/19).

Buyer began using Manufacturer's computer but found it "unfit for regular use as it would freeze and overheat regularly . . . The computer froze and overheated over 30+ times in the month of April 2018 . . . ." *Id.* at 8. Buyer was stuck with the defective computer, because neither Seller nor Manufacturer would replace the computer or refund Buyer's purchase price, even though it came with a one-year warranty. *See Id.* at 2.

Buyer decided to file a small-claims action against the Defendants in the Philadelphia Municipal Court. He then discovered Seller was still advertising the same, $380 computer in July of 2018, five months after he filed suit in the municipal court. *Id.* Buyer saved the July advertisement and went to Seller's store with a third party. That person entered the store and asked about the $380 computer from the advertisement. Again, an employee said the $380 computer was not available and attempted to sell the third party a more expensive computer. *Id.*

Realizing that he was not the only potential victim of this deceptive sales tactic, Buyer sought recourse on behalf of all similarly situated consumers. In his amended complaint, Buyer averred that Seller "not only knew, but has been intentionally running deceptive advertisements to trick consumers into coming to [its] store to purchase items at a higher price, which is a very-well-established tort known as ***bait and switch*** . . . ." *Id.* (emphasis in original). He alleged that Seller "knowingly and willfully misrepresented to [Buyer] and the Class that [Seller's] rates would be lower than standard market conditions on various occasions, particularly in-store-only as well, when, in fact, its rates

are not what are advertised and in fact may be higher or non-existent at all."
*Id.* at 11.  This "deception caused [Buyer] and the Class to pay substantially higher rates than those otherwise available in the market and also acquire products that were inferior in quality."  *Id.*

Buyer seeks damages and an injunction against Seller "from continuing to misrepresent its rates to Pennsylvania consumers . . . ."  *Id.*  Buyer also seeks legal fees and costs under the UTPCPL.

### III.   Procedural History

As mentioned, Buyer initiated this lawsuit in the Philadelphia Municipal Court.  That court ruled in favor of the Defendants, and Buyer sought a trial *de novo* in the court of common pleas.  Defendants filed preliminary objections to the original complaint, which a trial judge sustained.

Next, Buyer filed an amended complaint listing four counts (UTPCPL, breach of contract, breach of implied covenants, and unjust enrichment) and instituting a class action.  *Id.* at 8-10.  The Defendants renewed their preliminary objections in the nature of a demurrer to all four counts.  Because the case had become a class action, the parties agreed to transfer it from the trial court's arbitration division to its commerce program.

Thereafter, a commerce-program judge issued an order sustaining the second set of preliminary objections as to both Defendants and dismissing the amended complaint with prejudice.  The trial court ruled that Buyer purchased the computer for a business purpose, exempting the transaction from UTPCPL protection.  The court also determined that Buyer and Defendants never

entered a contract, and that Buyer did not plead sufficient facts to demonstrate unjust enrichment.

Buyer timely appealed.[5]

## IV.   Analysis

Buyer raises one issue on appeal.  He asks whether:

> "Twitch streaming" – the act of broadcasting [oneself over the Internet] – a trend that is common and popular among many today as a hobby, a business, and a sport – constitutes a "business", *per se*, to prohibit a person purchasing a single computer for [Twitch streaming from asserting] protection under the Consumer Protection and Bait-and-Switch Laws?

Buyer's Brief at 8 (some capitalization removed).[6]

_____

[5] The trial court did not order Buyer to file a Pa.R.A.P. 1925(b) statement.

[6] We note that Manufacturer asks us to quash this appeal under Pennsylvania Rule of Appellate Procedure 2101, because, according to Manufacturer, Buyer cited no authority and does not reference the record in his brief.  Rule 2101 provides:

> Briefs . . . shall conform in all material respects with the requirements of these rules as nearly as the circumstances of the particular case will admit, otherwise they **may be** suppressed, and, if the defects are in the brief or reproduced record of the appellant and are substantial, the appeal or other matter **may be** quashed or dismissed.

Pa.R.A.P. 2101 (emphasis added).  Thus, when an "Appellant's violation does not substantially impede appellate review, we decline to quash the appeal." ***Thompson v. Thompson***, 187 A.3d 259, 263 n.1 (Pa. Super. 2018), *appeal granted on other grounds*, 195 A.3d 168 (Pa. 2018).

Although inartful, Buyer's brief relies upon the regulations of the Internal Revenue Service ("IRS") to differentiate between a hobby and a

In its responsive brief, Manufacturer argues that we should affirm the order dismissing it with prejudice on alternative grounds.  **_See_** Manufacturer's Brief at 6-8.

We address both issues in turn.

*A.     Buyer's Purpose for the Computer*

Buyer asks whether the trial court erred by deeming his live streaming on Twitch a business purpose, as a matter of law.  Buyer contends buying a computer for that activity "is no more a business [purchase] than a person buying some paint for an art project or cleats for soccer."  Buyer's Brief at 26. Just as the purchasers of those goods might become professional artists or soccer players, Buyer accepts that a Twitch streamer may, one day, become a professional, Internet sensation.  **_See id._**  However, Buyer says, it is absurd to hold that his purpose for the computer was *per se* a business purpose, just as it would be absurd to hold that amateur artists and youth-soccer players buy their supplies and equipment for business purposes.

_____

business activity.  Buyer asserts those regulations demonstrate that the trial court erred when it found his use to be a business purpose.  Therefore, we cannot say Buyer cited **_no authority_** in violation of Pa.R.A.P. 2119(a) (requiring "citation of authorities as are deemed pertinent.").  Moreover, the only relevant document is Buyer's amended complaint, which this Court easily located in the minuscule record.  Like the brief in **_Thompson_**, Buyer's brief has not impeded our appellate review.  We therefore reach the merits.

Manufacturer also asks whether Buyer waived his claims of error on the dismissal of counts two, three, and four of the amended complaint by failing to address those issues on appeal.  **_See_** Manufacturer's Brief at 14.  Because Buyer has claimed no error by the trial court regarding those counts, we express no opinion regarding the dismissal of those counts.

To highlight the error of the trial court's decision, Buyer directs us to the IRS's regulations. He claims that the IRS draws the line between a business and a hobby at a threshold of $10,000 of income. *See id.* at 8, 20, 26. Because Buyer's purpose produces income below that line, he suggests it was error for the trial court to conclude that he engaged in a business, as a matter of law. "In short, absent a continuous stream of $10,000+ in revenue, there are absolutely no grounds to consider [Buyer's] purchase a business purchase, even if [Buyer], a non-lawyer, believed this to be a business . . . ." *Id.* at 26-27. In other words, Buyer argues that this is an objective test, not a subjective one. Hence, his initial, subjective view of the purpose is irrelevant.

In response, Seller quotes a few random, unconnected allegations from Buyer's amended complaint. It then adopts the trial court's analysis that Buyer made a purchase for business purposes that fell outside the protections of the UTPCPL. To support that contention, Seller cites to Buyer's original complaint. Seller also notes that "during the Municipal Court hearing, [Buyer] confirmed on the record that the computer was used solely for business purposes." Seller's Brief at 7.

Manufacturer similarly relies upon the trial court's reasoning that Buyer purchased the computer for business purposes. It also argues Buyer levied no factual allegations that, if proven at trial, would render Manufacturer liable for damages under law. It cites the amended complaint's allegations that Manufacturer did not take affirmative steps to prevent Seller's allegedly

unlawful conduct. Manufacturer therefore asks us to affirm the order dismissing it from this case on alternative grounds.

"When an appellate court rules on whether preliminary objections in the nature of a demurrer were properly sustained, the standard of review is *de novo*, and the scope of review is plenary." ***Mazur v. Trinity Area School Dist.***, 961 A.2d 96, 101 (Pa. 2008). We may affirm an order sustaining "preliminary objections only when, based on the facts pleaded, it is clear and free from doubt that the complainant will be unable to prove facts legally sufficient to establish a right to relief." ***Id.*** In other words, we must resolve any doubt in favor of reversal.

"For the purpose of evaluating the legal sufficiency of the challenged pleading, the court must accept as true all well-pleaded, material, and relevant facts alleged in the complaint and every inference that is fairly deducible from those facts." ***Id.*** When, as here, there is an amended complaint of record, "[w]e take these facts from [the] ***amended*** complaint . . . ." ***Grose v. Procter & Gamble Paper Prod.***, 866 A.2d 437, 439 n.1 (Pa. Super. 2005) (emphasis added). Thus, our scope of review only includes that document.

Here, the trial court ignored Buyer's amended complaint. Instead, it cited the ***original*** complaint and a transcript from the municipal court hearing, which Defendants attached to their preliminary objections. The trial court opined as follows:

> [Buyer] did not purchase the computer for reasons covered under the UTPCPL. Rather, [Buyer] stated in the Municipal Court hearing that he bought the computer for a business

- 9 -

> and commercial purpose. In the original complaint, [Buyer] explicitly averred that he purchased the computer for a "very specific business/legal project." In the amended complaint, [Buyer] contradicts his previous testimony and pleadings by alleging the computer was intended for "purposes personal in nature." It appears to this court that [Buyer] is reforming his former testimony in the hopes to properly plead this cause of action. However, [Buyer] does not have standing to sue under UTPCPL, because he bought the computer for a business and commercial purpose. As such, [Buyer's] UTPCPL claim against both Defendants is dismissed with prejudice.

Trial Court Order, 1/9/19, at 2 n.1

The Unfair Trade Practices and Consumer Protection Law, as its name implies, is a legislative enactment "to protect the public from fraud and unfair or deceptive business practices." *Burke v. Yingling*, 666 A.2d 288, 291 (Pa. Super. 1995). This Court described the UTPCPL as legislative "enhancements of pre-existing common law protections [that] included the codification of a list of practices designated as 'unfair or deceptive' and therefore 'unlawful' . . . ." *Valley Forge Towers S. Condo. v. Ron-Ike Foam Insulators, Inc.*, 574 A.2d 641, 644 (Pa. Super. 1990), *affirmed* per curiam, 605 A.2d 798 (Pa. 1992). The UTPCPL enhancements also included previously unknown methods for victims of unfair-trade practices to seek judicial relief.

One such method is "a private action to recover actual damages or one hundred dollars ($100), whichever is greater." 73 P.S § 201-9.2. The statute also authorizes a trial court, "in its discretion, [to] award up to three times the actual damages sustained, but not less than one hundred dollars ($100),

- 10 -

and [to] provide such additional relief as it deems necessary or proper." **Id.** The court may also award "costs and reasonable attorney fees." **Id.**

That private cause of action only extends to persons who purchase or lease a good or service "primarily for personal, family, or household purposes . . . ." 73 P.S. § 201-9.2. This primary-purpose clause ties a plaintiff's right to bring a private, UTPCPL action to the purpose for which the good or service is used.

Pennsylvania's leading case on the "primary-purpose" clause is **Valley Forge**, 574 A.2d 641. There, a condominium association hired a contractor to install a roofing membrane that Mameco International, Inc. manufactured. After the contractor installed the good, Mameco "issued a 10-year warranty directly to the condominium association." 574 A.2d at 643. Two years later, the roof leaked.

The association asked the contractor and Mameco to honor the 10-year warranty. The contractor made one repair attempt. It failed. After that, the contractor and Mameco refused to return the condominium association's phone calls, so the association sued both companies for breach of an express warranty, breach of the implied warranty of merchantability,[7] breach of the implied warranty of fitness for a particular purposed,[8] and a UTPCPL claim.

_____

[7] **See** Article 2 of the Uniform Commercial Code ("UCC"), 13 Pa.C.S.A. § 2314.

[8] **See** Article 2 of the UCC, 13 Pa.C.S.A. § 2315.

- 11 -

Mameco filed a preliminary objection in the nature of a demurrer to the UTPCPL count. The preliminary objection asserted that (1) the condominium association had never contracted with Mameco for a warranty and (2) the condominium association was using the good for business purposes. The trial court agreed and dismissed the UTPCPL count with prejudice.

On appeal, we reversed in both respects.

First, this Court rejected the notion that the association could not sue Mameco under the UTPCPL without a contract. Given the absence of any statutory language requiring privity of contract, the remedial goals of the UTPCPL, and the common law's development away from a privity-of-contract requirement to prove fraud, this Court concluded "that strict technical privity was not intended by our legislature to be required to sustain a cause of action under 73 P.S. § 201-9.2." *Id.* at 647.

Second, the trial court reasoned, because the association's business was maintaining the condominium building, it had purchased the good for that business purpose. We branded this logic "fundamental error." *Id.* at 648. Mameco also argued on appeal that the roofing membrane the Association had purchased was a commercial product. We declined to adopt such a rigid interpretation of the primary-purpose clause.

Instead, this Court held that the various purposes of the unit owners controlled the question of why the condominium assocation, as their legal representative, purchased the good. To ascertain those varied purposes, we examined the facts alleged in the operable complaint and opined as follows:

the condominium building upon which the roof was placed here, was **primarily** used for personal, family, or household **residential** use by the unit owners and/or their lessees. While the record reveals that some of the units in the building were used for **business** purposes, neither the number of such units, nor the square footage involved, would provide a basis to conclude at this nascent stage in the proceedings that **business** rather than **residential** use predominated. We note in this regard, that because a leak-proof roof is ultimately essential to the structural integrity of the whole condominium building, it is the primary (**preponderate**) purpose (**use**) of the whole building, and not the most directly affected units which would control.

Hence, we conclude that, giving the Condominium Association the benefit of all facts pled and all favorable inferences reasonably derivable therefrom, the roof was purchased "primarily for personal, family, or household purposes" within the meaning of those words in the UTPCPL.

*Id.*, 574 A.2d at 648 – 649 (1990) (some emphasis in original; some emphasis added).

We refused to hold that the condominium association's primary purpose – *i.e.*, its **preponderate use** – for the good was business, even though the association purchased the good in conjunction with its business operations. The alleged facts indicated that the unit owners had mixed uses for the good, and our exacting standard of review for orders that sustain preliminary objections required us to resolve all discrepancies of fact in favor of the plaintiff, the condominium association. In other words, where the alleged facts were unclear, it was an error of law to deem the association's purpose for the good a business purpose, *per se*. Based upon the facts as pleaded,

the owners' preponderate uses for the good were residential (*i.e.*, personal or household).[9]

In the matter at bar, the trial court repeated the fundamental error that our appellate courts rejected in **Valley Forge**. The trial court interpreted the facts of record in the manner that was least favorable to Plaintiff/Buyer. In fact, it compounded that error by basing its entire decision to dismiss on facts not properly before it and credited those facts over the allegations in the amended complaint. Now, the Defendants ask this Court to perpetuate that error by also exceeding our scope of review and considering facts outside the amended complaint. This we may not do. **See Grose**, 866 A.2d at 439 n.1. Whatever Buyer testified to in the municipal court and whatever was in the original complaint are irrelevant at this juncture of the case, because they are beyond our scope of review.

Moreover, even if we could review those pre-amended-complaint facts, they would not sustain the order before us. The purported Class has alleged a conflicting purpose for Buyer's purchase, and Buyer has abandoned his prior allegations and legal theories. He has a right to do this at the pleadings stage. "A party, either by filed consent of the adverse party or by leave of court, may at any time change the form of action . . . or **otherwise amend the**

---

[9] Also, we note Mameco petitioned the Supreme Court of Pennsylvania for an allowance of appeal, which that Court granted. **See Valley Forge Towers S. Condo. v. Ron-Ike Foam Insulators, Inc.**, 605 A.2d 798 (Pa. 1992). It summarily affirmed this Court's Opinion *per curiam*.

- 14 -

*pleading*." Pennsylvania Rule of Civil Procedure 1033 (emphasis added); *see also* Pa.R.Civ.P. 1028(c)(1) (granting automatic leave to amend a pleading in response to preliminary objections within 20 days as a matter of right). Indeed, allowing plaintiffs to amend their allegations after a trial court sustains preliminary objections is the standard practice in Pennsylvania. *See* 5 Standard Pa. Practice 2d §24:36 at 46, *Illustration*.

"The rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable." Pennsylvania Rule of Civil Procedure 126; *see also Delverme v. Pavlinsky*, 592 A.2d 746, 748 (Pa. Super. 1991). Our liberal construction extends to the right to amend the pleadings within the statute of limitations, to revise the allegations and legal theories, and to state an actionable claim:

> Amendments to a complaint which **change the cause of action**, if made before the statue of limitations has run, are freely authorized by the Rules of Civil Procedure, when the defendant is not prejudiced by such an amendment.
>
> *Reminder:* It is the duty of the court to allow a proposed amendment to the complaint, when the amendment sought will enable the plaintiff to secure a just disposition of the case on the merits, and does not introduce an additional cause of action barred by the statute of limitations, or otherwise prejudice the defendant in some substantial manner; prejudice to the other side will occur if the statute of limitations bars the cause of action set out in the amendment and amendment cannot be allowed in those circumstances.

5 Standard Pa. Practice 2d §24:39 at 49 (emphasis added).

Here, the original complaint omitted the UTPCPL and pleaded facts that precluded that statute's coverage. After reading the first set of preliminary objections, Buyer apparently reconsidered his legal theories, amended the complaint's allegations, and thereby changed the cause of action within the statute of limitations. Because this suit's underlying events occurred in February of 2018 and Buyer filed the amended complaint that same year, it is clear that he filed the UTPCPL count of the amended complaint within the six-year statute of limitations.[10] Therefore, the Defendants have suffered no prejudice by the amendment, and the trial court should have accepted the allegations of the amended complaint as true to decide the preliminary objections.

Having explained the trial court's procedural misstep, we turn to the operable pleading – the amended complaint. That pleading alleges Buyer used the computer for a single purpose, "personal in nature [that did] not rise to the level of . . . commercial use." Amended Complaint at 6. To support that contention, Buyer relies upon hypothetical analogies and the regulations of the IRS distinguishing between businesses and hobbies. We begin with the regulations and then consider Buyer's analogies.

---

[10] "Since section 201-9.2 of the UTPCPL provides for a civil action which is not subject to a limitations period, the Unfair Trade Practices and Consumer Protection Law is subject to the six-year 'catchall' statute of limitations." **Gabriel v. O'Hara**, 534 A.2d 488, 495 (Pa. Super. 1987).

In administering the Internal Revenue Code of the United States,[11] the IRS must regularly classify taxpayers' activities as businesses or hobbies, because the tax consequences for each differ. To guide those determinations, the agency promulgated regulations indicating, much like *Valley Forge*, *supra*, that the question is fact sensitive, with case-specific nuances that may not lend themselves to one-size-fits-all pronouncements. Instead, the IRS has implemented a nine-factor test, in which "[n]o one factor alone is decisive."[12] IRS, "How Do You Distinguish between a Business and a Hobby?"

_____

[11] *See* 26 U.S.C. §§ 1 – 1400Z-2. The Internal Revenue Service administers that statute in the name and under the authority of the Secretary of the Treasury of the United States. 26 U.S.C. § 7801.

[12] The pertinent IRS regulation is as follows:

> **(b) Relevant factors.** In determining whether an activity is engaged in for profit, all facts and circumstances with respect to the activity are to be taken into account. No one factor is determinative in making this determination. In addition, it is not intended that only the factors described in this paragraph are to be taken into account in making the determination, or that a determination is to be made on the basis that the number of factors (whether or not listed in this paragraph) indicating a lack of profit objective exceeds the number of factors indicating a profit objective, or vice versa. Among the factors which should normally be taken into account are the following:
>
> > (1) Manner in which the taxpayer carries on the activity . . .
> >
> > (2) The expertise of the taxpayer or his advisors . . .
> >
> > (3) The time and effort expended by the taxpayer in carrying on the activity . . .

available at https://www.irs.gov/faqs/small-business-self-employed-other-business/income-expenses/income-expenses (last visited 9/16/19).

Nothing in the IRS regulations sets a financial line of demarcation at $10,000 to render an activity a business, as Buyer suggests. Thus, Buyer does not persuade us to establish $10,000 of income as the threshold between a personal use and a business use under the primary-purpose clause of the UTPCPL. Moreover, *Valley Forge* rejects such rigidity.

Still, we find the regulations helpful. They reflect the wisdom of the agency's experience in wrestling with cases like the one we now face. The nine-factor test, in which "[n]o one factor is determinative," 26 C.F.R. § 1.183-2(b), places in sharp relief what the *Valley Forge* Court's analysis implied. Whether a person acquired a good for a personal or business purpose presents a mixed question of fact and law, where issues of fact predominate. Cases like this rise or fall based on how the factfinder views the evidence, what

_____

(4) Expectation that assets used in activity may appreciate in value . . .

(5) The success of the taxpayer in carrying on other similar or dissimilar activities . . .

(6) The taxpayer's history of income or losses with respect to the activity . . .

(7) The amount of occasional profits, if any, which are earned . . .

(8) The financial status of the taxpayer . . .

(9) Elements of personal pleasure or recreation . . .

26 C.F.R. § 1.183-2.

evidence and testimony the factfinder accepts as true, and how much weight he or she affords to those facts. These decisions turn on the specific circumstances of the purchaser's use(s) for the good or service. Thus, any genuine issue of material fact on the question must await trial for resolution.

A person's preponderate use for a purchase governs under the primary-purpose clause. ***See Valley Forge***, ***supra***. Where the facts are in dispute, a plaintiff must prove that his main (not exclusive) use for the good or service was personal, familial, or household in nature, by a preponderance of the evidence. Buyer argues the use will vary from person to person, based upon the needs and goals of individual purchasers. We agree.

A person who buys paints for her daughter's first-grade arts and crafts is quite different from, say, Michelangelo buying paints for the Sistine Chapel. Between those black-and-white extremes, the paints quickly blend into shades of gray. Say the school student went to a store and bought the paints herself. Was her purchase personal or educational, or is that a distinction without a difference? Would it matter if her public-school teacher bought the paints?[13] In that scenario, do we examine the teacher's educational use, or should we

---

[13] ***See Cumberland Valley School Dist. v. Hall-Kimbrell Environmental Services, Inc.***, 639 A.2d 1199 (Pa. Super. 1994) (concluding that a public school's use for asbestos-abatement services was a governmental purpose not amenable to a private action under the UTPCPL.)

consider the student's personal use, given that she was the end user?[14]  Does the result change if the student is in college earning an M.F.A., instead of elementary school?  If she sells a painting for a profit at a summer arts festival, do the paints she used to create it during the previous school year become a business purchase?  The hypotheticals seem endless.

The same conundrum exists for Twitch streaming.  At what point does the non-business purpose of streaming live over the Internet to interact with friends cross the threshold into a business venture?  While casual streaming from one's home with friends is certainly not commercial, a person streaming full-time and earning thousands of dollars annually is obviously in business.  Between those two polar opposites, though, this Court has no idea where the line of demarcation falls, and we are unequipped to make a definitive pronouncement on the paltry record before us.

What we can say is that the amended complaint **alleges** Buyer's Twitch streaming was a personal use.  In fact, unlike **Valley Forge**, where the complaint alleged mixed uses by the various condominium-unit owners, the amended complaint at bar avers that Buyer's use was only personal.  Thus, it was error for the trial court to make a contrary finding of fact at this stage of

---

[14] **See Balderston v. Medtronic Sofamor Danek, Inc.**, 285 F.3d 238 (3rd Cir. 2002) (holding that a doctor's purchase of bone screws was for business purposes, even though under FDA regulations only he, and not the end user – his patients – could purchase them).

the proceedings and hold, as a matter of law, that Buyer used the computer for business purposes.

*B.     Trial Court's Dismissal of Manufacturer with Prejudice*

Our review cannot end there, however, because Manufacturer asks us to affirm its dismissal from Buyer's suit on alternative grounds.[15]

Indeed, this Court is "not bound by the rationale of the trial court and may affirm on any basis." ***Sw. Energy Prod. Co. v. Forest Res., LLC***, 83 A.3d 177, 184 (Pa. Super. 2013) (quotations and citations omitted). If Buyer has not alleged sufficient facts in the amended complaint to sustain a UTPCPL cause of action against Manufacturer, we may still affirm the trial court's order dismissing it with prejudice.

Manufacturer argues the amended complaint has established no basis from which Buyer may recover against it. Manufacturer notes Buyer "is a remote purchaser of [its] computer purchased at [Seller's] store located in King of Prussia." Manufacturer's Brief at 6. It further asserts the amended complaint "is devoid of any actual allegations of improper conduct on [Manufacturer's] behalf, nor does it cite to any specific statue, law, or regulation that [Manufacturer] is alleged to have violated." ***Id.***

Appellate courts in this Commonwealth have long chastised trial courts for dismissing a complaint with prejudice without granting plaintiffs leave to amend the deficient pleading. Indeed, "If it is possible that the pleading can

---

[15] Our scope and standard of review are unchanged from the previous section of this Memorandum; we incorporate them here by reference.

be cured by amendment, a court 'must give the pleader an opportunity to file an amended complaint . . . This is not a matter of discretion with the court but rather a positive duty.'" ***Jones v. City of Philadelphia***, 893 A.2d 837, 846 (Pa. Cmwlth. 2006) (quoting ***Framlau Corporation v. County of Delaware***, 299 A.2d 335 (Pa. Super. 1972). Thus, only when "it is clear and free from doubt" that a plaintiff has no path by which to amend a complaint to conform to law, may we affirm the dismissal of a defendant with prejudice on preliminary objections in the nature of a demurrer. ***Mazur***, 961 A.2d at 101.

To determine if the facts in Buyer's amended complaint might give rise to a UTPCPL claim against Manufacturer, we examine the statute in issue. It dictates, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce as defined by subclauses (i) through (xxi) of clause (4) of section 21 of this act . . . are hereby declared unlawful." 73 P.S. § 201-3. "'Unfair methods of competition' and 'unfair or deceptive acts or practices' means any one or more of the following . . .

> (xiv) Failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made;

73 P.S. § 201-2(4).

Thus, the General Assembly has barred persons from failing to honor any written guarantee or warranty made to consumers, regardless of whether they make such promises before or after the sale or lease. 73 P.S. § 201-

1(4)(xiv).  To prove such a violation, "strict technical privity was not intended by our legislature . . . under 73 P.S. § 201-9.2." **Valley Forge**, 574 A.2d at 647.  Thus, the **Valley Forge** Court held that the warranty Mameco delivered to the condominium association **after** the contractor installed the roofing membrane was enforceable under 73 P.S. § 201-1(4)(xiv), even though the association never directly contracted with Mameco.

In subclause (xiv), the legislature curtailed the "offering" of warranties to the public (most of whom are not attorneys) during retail sale, only to later disclaim those promises under the niceties of contract law.  Indeed, it appears Manufacturer is attempting that escape route from this lawsuit, by reminding us that Buyer "is a remote purchaser of [its] computer purchased at [Seller's] store . . . ."  Manufacturer's Brief at 6.  However, **if** Manufacturer offered Buyer a **written** warranty, it may not shirk its promise to repair, to replace, or to refund the purchase price so easily.

Buyer alleged that the defective computer had a warranty for one year. **See** Amended Complaint at 2.  However, he did not specify which Defendant gave him that warranty or whether it was in writing.  Even so, it is a reasonable inference to draw from the facts alleged that at least one, if not both, of the Defendants gave that one-year warranty to Buyer.

Because Buyer has not fully developed this potential UTPCPL violation in his amended complaint and failed to attach a written warranty as an exhibit, Buyer has not pleaded sufficient facts in his amended complaint that either

Manufacturer or Seller violated 73 P.S. § 201-1(4)(xiv). However, Buyer's claim of a one-year warranty impliedly implicates one or both Defendants.

Therefore, it is too early to dismiss Manufacturer from this lawsuit with prejudice. Buyer may file a second amended complaint to flesh out his UTPCPL theory under 73 P.S. § 201-1(4)(xiv), if he can produce a written warranty from Manufacturer.

Accordingly, we decline Manufacturer's invitation to affirm the order of dismissal with prejudice on alternative grounds.

## V. Conclusion

The trial court erred by granting judgment as a matter of law to the Defendants, because the amended complaint does not allege that Buyer used the computer for business purposes. On the contrary, it undoubtedly alleges he used the good for a personal purpose. Also, our *de novo* review of the amended complaint and the UTPCPL reveals Buyer alleged facts hinting at a possible basis for recovery against Manufacturer for an unfulfilled warranty under Section 201-1(4). A second amended complaint may be appropriate.

Accordingly, we now modify[16] the appealed from order as follows:

> **AND NOW**, this 9th Day of January, 2019, upon consideration of the preliminary objections of Defendants Best Buy, LP and Dell, Inc. to Plaintiff Elansari's amended complaint it is hereby **ORDERED** that preliminary objections of both Defendants are **SUSTAINED** as to Counts II, III, and VI. It is further **ORDERED** that preliminary objections of Dell, Inc. are **SUSTAINED** as to Count I of the amended

---

[16] "An appellate court may . . . modify . . . any order brought before it on appeal . . . ." 42 Pa.C.S.A. § 706.

- 24 -

complaint, and that leave is **GRANTED** to Mr. Elansari to file a second amended complaint against Dell, Inc. It is further **ORDERED** that the preliminary objections of Best Buy, LP are **OVERRULED** as to Count I.

Order affirmed as modified. Case remanded for proceedings consistent with this Memorandum. Jurisdiction relinquished.

Judge Colins joins in this memorandum.

Judge Ott concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/18/19